PHILIP MORGAN, Appellant, v. THE DES MOINES UNION RAILWAY COMPANY AND THE CITY OF DES MOINES.

**Terminal Railroads:** ACQUIRING OF RIGHT OF WAY: *Consent of railroad commissioners not essential.* A city terminal railroad, whose articles of incorporation recite that it is for the purpose of owning, constructing and operating depots, freighthouses, and railways within a certain city, and that it shall possess all the powers conferred upon corporations for pecuniary profit by Code title 9, chapter 1, is incorporated under the general law, and not under Acts of the Twentieth General Assembly,

chapter 139, authorizing the incorporation of companies, to construct buildings and tracks for the use of railroad companies, and providing that such companies may acquire such rights of way as the railroad commissioners shall deem necessary; and, hence the consent of the railroad commissioners is not necessary to its acquiring a right of way.

GRANT OF RIGHT OF WAY BY CITY: *Power to Purchase Additional Right of Way.* Where a city grants a right of way in an alley, to a railroad company, such right of way did not prevent the company from acquiring by purchase a private right of way in addition thereto on lands adjoining the alley.

GRANT OF RIGHT TO CROSS STREET. *Is Not Exclusive as to Width of Crossing.* Where a terminal railroad company only operating lines in one city is granted a certain number of feet in width in which to cross the city street, such grant is not exclusive. but the road may use a greater width, since a railroad company has a right to cross the streets of a municipality without the consent of the city authorities.

CROSSING AT ANGLE. A railroad company crossing city streets at grade is not prohibited or restricted from crossing at an angle as long as its tracks are not laid in front of property belonging to other.

REVERSION BY NON-USER. Where arailroad company acquires the right to lay its tracks in an alley, and also purchases a private right of way adjoining thereto, on which it lays its tracks, but does not use the alley for tracks for over eight years, such non user does not constitute an abandonment of the right of way in the alley, within Code, 1873, section 1260, as amended by Fifteenth and Eighteenth General Assemblies, providing that the failure of a railroad company acquiring a right of way to use or operate the same for a period of eight years shall cause the right of way to revert to the original owners.

RIGHT TO TRANSFER GRANT. Where a city grants a right of way in an alley to a railroad company, the company may transfer such right to another company, though it has never used such alley for railroad purposes.

*Appeal from Polk District Court.*—HON. THOMAS F. STEVENSON, Judge

SATURDAY, APRIL 13, 1901.

Action in equity to abate a nuisance caused, as alleged, by the construction and maintenance of the tracks of defendant railway, and by the operation of trains thereon, and by permitting cars to stand upon its said tracks so as to obstruct access to plaintiff's property.  The trial court granted some slight relief to plaintiff, which is not complained of by defendants; but, in the main, judgment went against plaintiff, and he appeals.—*Affirmed.*

*Phillips, Ryan & Ryan* for appellant.

*Cummins, Hewitt & Wright* for appellant.

*J. E. Mershon* and *L. W. Bannister* for the city.

Waterman, J.—Plaintiff is the owner of a lot in defendant city, upon which stands a large, brick building that is used as a hotel.  This building fronts east upon Fourth street, which runs north and south, with a slight descending grade, towards the south, in front of and just north of the building.  On the north of plaintiff's property is an east and west alley 25 feet wide; immediately west is a north and south alley; and upon the south the property abuts on another east and west alley, or narrow street, 25 feet wide.  The tracks of defendant railway run east and west, passing plaintiff's property on the north.  The right of way is mainly upon a strip of land owned by the railway company, and which abuts upon the north side of the alley that bounds plaintiff's property on the north.  One of these tracks occupies this alley east of Fourth street, and one is also laid therein west of the north and south alley which runs in the rear of plaintiff's premises.  A sketch of the premises with the immediate vicinity on the north is appended, in order to convey a clearer understanding of the genartl situation:

There are several grounds of complaint, one of which grows out of the sustaining of defendant's demurrer to a poriton of plaintiff's reply. As this matter will be disposed of in what we have to say generally on the case, we shall not further notice the manner in which the point was raised. With the brief statement given as a basis, we think we can make ourselves better understood by taking up the other facts as they arise in connection with the different issues presented.

1. Plaintiff claims that defendant has no right to maintain its tracks across Fourth street, and to sustain his contention insists that defendant is incorporated under chapter 139, Acts Twentieth General Assembly, and that its rights under such act are restricted. One limitation upon which an argument is founded, as contained in section 2, is as follows: "Every corporation formed under the provisions of the preceding section shall have power to take and hold for the purposes herein mentioned *such real estate as may be found necessary by the railroad commissioners* for the location of its depot and approaches which it may acquire

by purchase or condemnation," etc. As defendant's tracks are laid mainly upon lands which it purchased and holds for right of way purposes, and as it concededly never invoked any finding by the railroad commissioners, it is insisted that such tracks are unlawful structures. The answer made by the railway company is that it is incorporated under the general law, and no finding by the railroad commissioners was necessary to warrant it in procuring a right of way and laying track thereon. It may be well to look first at the object of chapter 139, Acts Twentieth General Assembly. We shall not set out the act in full, but content ourselves with saying that it is manifest from the terms of this statute that its purpose was to endow with the power of eminent domain a corporation which would otherwise possess no such power. The corporation provided for in this act is not a railway company. It is not intended that it shall operate locomotives or cars. Its purpose is to construct buildings and tracks for use by railway companies. There is no reason for assuming that a railway company could not also, irrespective of this act, construct a union depot, or that in so doing it would lose any of the powers it possessed under the general incorporation act. See *Beach v. Wakefield,* 107 Iowa, 567-582. That defendant was incorporated under the general law is made apparent by the terms of its articles, of which the following is a part: "Art. II. The general nature of the business to be transacted shall be the construction, ownership and operation of a railway in, around and about the city of Des Moines, Iowa, including the construction, ownership and use of the depots, freight houses, railway shops, repair shops, stock yards, and whatever else may be useful and convenient for the operation of railways at the terminal point of DesMoines, Iowa, as well as the transfer of cars from the line or depot of one railway to another, or from the various manufactories, warehouses, storehouses, or elevators to each other, or to any of the railways or depots thereof now constructed or to be hereafter constructed in or

around the city of Des Moines, and such corporation shall possess all the powers conferred upon corporations for pecuniary profit by chapter 1 of title IX of the Code and the amendments thereto." These articles were afterwards amended, but in no way was the language set out qualified in the amendment. Defendant, then, is a railway corporation, and at the time of its organization and of the doing of the acts complained of the following statutory provisions were in force: Section 464, Code 1873, gave to cities these enumerated powers: "They shall have power to lay off, open, widen, straighten, narrow, vacate, extend, establish and light streets, public grounds, wharves, landings, and market places, and to provide for the condemnation of such real estate as may be necessary for such purposes. They shall also have the power to authorize or forbid the location and laying down of tracks for railways and street railways on all streets, alleys and public places; but no railway tracks can thus be located and laid down until after the injury to property abutting upon the street, alley or public place upon which said railway track is proposed to be located and laid down has been ascertained and compensated in the manner provided for taking private property for works of internal improvement in chapter 4 of title X of the Code of 1873." Under the provisions of this act the council of defendant city passed an ordinance granting a right of way to the assignor of defendant railway, as will appear hereafter.

This right of way was along and upon certain streets and alleys, of which the alley that runs north of plaintiff's property was one. Instead of laying track at once in this alley, an additional right of way abutting it on the north was purchased and track was first laid there. It is thought by appellant the granted right of way was exclusive, and that defendant could acquire no other, nor cross the streets of the city anywhere save as provided in the ordinance, which would be, of course, in line with the alley. But we think the

right here given a city relates to its dealing with city property, streets and alleys, and we know of no restraint upon a railway's right to purchase and own so much of a right of way as it may see fit.

With relation to the right to cross streets on the line of its purchased right of way, we find this provision of the Code of 1873 relating to such corporations: "Sec. 1262. Any such corporation may raise or lower any turnpike, plankroad or other highway, for the purpose of having its railway cross over or under the same, and in such cases such corporation shall put such highway, as soon as may be, in a good repair and condition as before such alteration." The ordinance of a defendant city gave the railway the authority ot use 48 feet in width for its right of way across Fourth and other streets. One complaint is that it uses considerably more space than this. It was held, however, in *Gates v. Railway Co.,* 82 Iowa, 518, that under the statute last quoted a railway company has the right to cross the streets of a municipality without the consent of the city authorities. We have; then, this state of facts: The railway has a right of way granted by the city along the alley, and adjoining it on the north an additional right of way, which it has acquired under the law, and attached to which by law is a right to cross intervening streets. Nowhere are the tracks laid outside the right of way. To meet the *Gates Case* it is claimed by plaintiff that this is not such a railroad as is contemplated in the statute or in that opinion; that what is there referred to is a railroad passing through the city "from distant parts of the state"; or, as we understand, a longer road than this. But we hardly think it is meant that a railway's rights are to be measured by its length. Nor do we believe that length of line alone fixes the character of such a corporation. This is solely a commercial railway, and as such it is invested with the rights given by statute alike to all incorporations of that character. The number of tracks which they may lay is not limited by stat-

ute, and it would seem contrary to public policy that such limitation should be made. They are and should be allowed to provide facilities for doing the business required by public demands. To meet another argument made, we may add that such a company is not in any way restricted as to the angle at which it may lay tracks across a street, so long as they are not laid in front of property belonging to others. See *Gates Case, supra.*

With relation to the contention that the grant of 48 feet in width for street crossings was in the nature of. a prohibition upon the use of a wider right of way, we may further say that in *Merchants' Union Barb-Wire Co. v. Chicago, B. & Q. Ry. Co.,* 70 Iowa, 105, the same claim in principle was made as to an ordinance granting a right of way along the north side of a street, and this court held it unwarranted. Another thought which we may suggest in this connection is that the city, which is a party defendant, assents to the tracks as laid, and plaintiff's property does not abut thereon. *Morgan v. Railway Co.,* 64 Iowa, 589.

There is but one other matter connected with the Fourth street crossing, and that is the claim that the grade of the street has been raised where the tracks are laid. As we have said, Fourth street has a slight descending grade to the south at the place where the tracks cross. To lay each track on a level would make a series of steps in the street. When the crossing was constructed, it was thought best by the city authorities to lay the different tracks on a level, and have the grade descend from the south track. This was done, and, as a consequence, the south track is some six inches above the grade as it was established. While a number of witnesses say plaintiff's property is damaged by this slight elevation, they do not say how, and it is difficult to conceive in what particular it could be hurt. We are atisfied from all the evidence that plaintiff is in a better situation than if each separate track has been laid upon the level of the street. Indeed, we are inclined to think the estimate of

damage given by plaintiff's witnesses was founded mainly,. if not wholly, upon the proximity of the tracks to the property. This case is readily distinguishable from *Park v. Railroad Co.,* 43 Iowa, 638 and *Dairy v. Railroad Co.,* 113 Iowa, *post,* in each of which a high embankment across a street diverted travel from the highway, and rendered access to the property of the respective plaintiffs extremely difficult. It is not claimed here that any travel has been diverted from this street by the slight elevation of its surface,. nor can it be said with any show of consistency that because of that elevation alone plaintiff's property is less accessible: than before it was made.

II. Further complaint is made that at points east and west of plaintiff's property the alley that forms the north boundary is occupied by a track of defendant's road. The right to use this alley was granted by ordinance of defendant city to the Des Moines & St. Louis Railroad Company, from which defendant, by contract of assignment, gets its: rights; the defendant company being the successor in interest to all the property rights and franchises of the Des Moines & St. Louis Company lying within the limits of the city of Des Moines. Section 464 of the Code of 1873 authorized this action by the city, subject only to the condition that the railway company should pay all damages to abutting owners. See *Heath v. Railway Co.,* 61 Iowa, 11. Such owners have been fully paid by defendant to owners whose property abuts on those parts of the alley in which the track is laid. It is urged on behalf of plaintiff that, as the railway company did not lay track in this alley until more than eight years had elapsed after the ordinance was passed and accepted, its. right to take advantage of the privilege given is lost by abandonment. Section 1260, Code of 1873, as amended by the fifteenth and eighteenth general assemblies, upon which this argument is founded, is as follows: "Where a railway constructed in whole or in part has ceased to be operated for more than five years; or where the construction of a railway has been commenced and work on the same has ceased and

has not, in good faith, been resumed for more than five years, and remains unfinished; or where any portion of any such railway has not been operated for four consecutive years. and the rolling stock has been wholly removed therefrom, it shall be treated as abandoned, and all rights of the person or corporation constructing or operating any such railway, or so much as remains unfinished or from which the rails and rolling stock have been wholly removed, may be entered upon and appropriated as provided in the next section. If the railway or any part thereof shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased and has not been in good faith resumed for eight years, the right of way, including the road-bed, shall revert to the owner of the land from which said right of way was taken." This road was not abandoned within the meaning of this section, for, although the company did not lay track in the alley, it did at once lay it upon its purchased right of way adjoining, and has continuously since operated its road. Furthermore, it may be questioned as to whether this section is meant to apply to a grant of the use of a public highway. Some of the terms of this and the next following section, which relates to the same subject matter, are consistent with the thought that the land of private owners only is referred to. While, under these sections, a part of a right of way may be lost by non-user, it is not meant that a railway company, to hold the full width of its right of way, must cover it with tracks. As we have sought to show, defendant's right of way included the alley and tract adjoining which it acquired by purchase. At no time did it fail to use a continuous strip of this right of way.

III.    It is asserted by appellant that the Des Moines & St. Louis Railway, never having occupied any of its granted right of way west of east Fourth street, could not, by transfer, confer any right upon defendant to occupy or use such right of way. This proposition, while stated, is not argued, and we shall do no more than say that we deem counsel's position without support.

While we have not followed counsel in their discussion of the case, we believe the principles announced cover all the issues presented. The trial court ordered the removal of a switch stand from the alley bounding plaintiff's property on the north, and which was located west of said property. It also required the planking of a certain portion of the track, and enjoined defendant railway from permitting the standing of wagons or other vehicles for delivering or receiving freight in such part of the alley, or the standing of cars there longer than reasonably necessary to load or unload them. In all other respects the finding was in defendant's favor. We concur with the district court, and its judgment is therefore AFFIRMED.