JOHNSTON *v.* MICHIGAN CONSOLIDATED GAS COMPANY.

1. DEEDS—BOUNDARIES—METES AND BOUNDS—SPECIFIC MONUMENTS.
   Specific measurements by metes and bounds are controlled by
   specific monuments of description in a deed.

2. EASEMENTS—INDEFINITENESS—PLEADING.
   A right-of-way which is too indefinite for a determinate de-
   scription is too indefinite to be established and protected by
   the court of chancery; it being necessary that party alleging
   such right-of-way so state his case that if admitted by answer,
   or proved at hearing, the court can decree upon it.

3. SAME—UNCERTAINTY—RIGHT-OF-WAY FOR PIPE LINE.
   Grant of easement in a right-of-way agreement for a pipe line
   across half of a quarter section *held,* not void for uncertainty
   where stakes for laying of line were set out before agreement
   was signed.

4. EVIDENCE—EASEMENTS—DESCRIPTION—PAROL EVIDENCE.
   Parol evidence is admissible to supplement description in a
   memorandum as to sale of an easement.

5. EASEMENTS—UNCERTAINTY—RIGHT-OF-WAY FOR PIPE LINE.
   Agreement-conveyance of right-of-way for pipe line which ex-
   pressly looked to the laying of more than just the first pipe
   line was not void for uncertainty where right-of-way is granted
   across half of a quarter section, stakes for first pipe line were
   in place before agreement was signed and no pipe line was to
   be placed within 100 feet of any buildings on the premises.

6. COVENANTS—ACCEPTANCE OF DEED POLL.
   The grantee by accepting a deed poll binds himself to covenants
   therein contained, hence, it is not void because not signed by the
   grantee.

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—BRIEFS—REASONS
   AND GROUNDS FOR APPEAL.
   A question which is briefed and is pending before the circuit
   courts in a series of cases is considered on appeal notwith-

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Boundaries § 53.
[3, 5] 17 Am Jur, Easements §§ 26, 86, 105; 24 Am Jur, Gas and Oil
§ 134.
[6] 16 Am Jur, Deeds § 358.
[9, 10] 17 Am Jur, Easements § 127; 24 Am Jur, Gas and Oil § 80
*et seq.*

standing it was not set forth in the reasons and grounds for
appeal (Court Rule No 67 [1945]).

8. PROPERTY—CLASSIFICATION.
Every right of property must usually have some peculiar quali-
ties of its own which must not be destroyed by inappropriate
attempts to classify it with different kinds.

9. EASEMENTS—IN GROSS—ASSIGNMENTS—PIPE LINES.
Easements for pipe lines, telephone and telegraph lines and
railroads are generally assignable even though in gross.

10. SAME—IN GROSS FOR COMMERCIAL PURPOSES—ASSIGNMENT.
Easements in gross, if of a commercial character, are alienable
property interests.

Appeal from Livingston; Lyons (Willis L.), J.
Submitted June 4, 1953. (Docket No. 41, Calendar
No. 45,803.) Decided October 5, 1953. Rehearing
denied November 27, 1953.

Action by Max L. Johnston and wife against Michi-
gan Consolidated Gas Company, a Michigan cor-
poration, for trespass to lands. Verdict and judg-
ment for plaintiffs. Plaintiffs appeal, claiming a
larger amount. Affirmed.

*Kenneth C. Davies* and *E. Reed Fletcher* (*Cornelia
Groefsema*, of counsel), for plaintiffs.

*VanWinkle & VanWinkle* and *Clare J. Hall* (*Dyer,
Angell, Meek & Batten*, of counsel), for defendant.

BUTZEL, J. On January 28, 1948, Max L. Johnston
and Marian B. Johnston, his wife, plaintiffs, en-
tered into the following agreement with the Austin
Field Pipe Line Company, a Michigan corporation,
predecessor in interest of the Michigan Consolidated
Gas Company, a Michigan corporation, defendant:

"RIGHT-OF-WAY AGREEMENT 231
"For and in consideration of the sum of $50.50 to
us in hand paid, receipt of which is hereby acknowl-
edged, Max L. Johnston and Marian B. Johnston, his
wife, do hereby grant, convey and warrant to Aus-

tin Field Pipe Line Co. a Michigan corporation with offices at Detroit, Michigan, its successors and assigns, a right-of-way to construct, test, reconstruct, renew, operate, maintain, inspect, alter, repair and remove a pipe line or pipe lines, for the transportation of gas, or any of its products, and such drips, valves, fittings, meters and other equipment and appurtenances as may be necessary or convenient for such operations, over and thru the following real estate in Livingston county, State of Michigan to-wit: The east half of the northeast quarter of section 22, township 4 north, range 5 east, Deerfield township, Livingston county, Michigan.

"All saw timber cut on pipe line right-of-way on said premises to be trimmed, brush burned and limbs piled so grantor can use for buzzwood. The main body of trees to be left at side of R/w. so grantors can saw in logs as he so desires. R/w. shall be left free of any large stones, holes or piles of dirt which would interfere with farming, hereby releasing and waiving all rights under and by virtue of any applicable homestead exemption laws.

"And also from time to time additional such pipe lines, and appurtenances, together with the right of ingress and egress at convenient points for such purposes; together with all rights necessary for the convenient enjoyment of the privileges herein granted. To HAVE AND TO HOLD the same unto said grantee, its successors and assigns, until said easement be exercised, and so long as any structure installed hereunder is used or remains thereon.

"Grantee shall replace in a good and workmanlike manner all tile cut in the construction of its lines hereunder.

"Grantee shall not construct its lines nearer to any of the buildings on said premises than 100 feet and shall not interfere with the use of said premises by grantor for stock raising or farming purposes, except in the exercise of the work permitted hereunder.

"Grantee shall pay the same consideration as above expressed for each additional pipe line and its appurtenances installed; and shall also pay rea-

sonable damages to growing crops, fences or improvements occasioned in laying, repairing or removing all lines, drips, and valves.   If this amount of damages be not agreed upon, it shall be determined by 3 disinterested persons, 1 appointed by the grantor, 1 by the grantee and the third by the 2 so appointed and their written determination of amount shall be final and conclusive.   Grantee shall bury pipe lines below plow depth.

"It is understood that the person securing this grant is without authority from grantee to make any agreement in respect to the subject matter hereof not herein expressed.

"The grantors represent that the above described land is NOT rented for the period beginning . . . . . . . . . . . . . 19. . ., to . . . . . . . . . . . . 19. . ., on . . . . . . . . basis, to . . . . . . . . . . . .

"Executed this 28th day of January, 1948.

MAX L. JOHNSTON        (Seal)
MARIAN B. JOHNSTON      (Seal)

"Signed, Sealed and Delivered
    in the presence of:
"PAUL J. BELL
"RUTH E. PURDY."

(The jurat and a clause providing for joinder in the deed by the tenant are omitted.)

Defendant laid 1 pipe line across plaintiffs' farm during the spring of 1948.   Sometime in the latter part of 1950, or the early part of 1951, one of defendant's representatives approached plaintiffs in regard to laying a second pipe line.   At that time plaintiffs were presented with a supplemental agreement ratifying the original one hereinbefore set forth.   Testimony on behalf of defendant was to the effect that this was done as a courtesy to the various landowners and so that there would be no misunderstandings over the second pipe line.   Plaintiff Johnston testified that when defendant's representative called on him regarding the second pipe line he felt that they should come to some agreement before

they came through; that the agent asked his terms and said he would take it (*sic*) back to the office; and that shortly thereafter Johnston was served with an injunction forbidding him from interfering with the laying of the second pipe line. One of defendant's production and pipe line superintendents testified that Mr. Davies, plaintiffs' attorney, refused defendant permission to lay its second pipe line, and that thereupon defendant filed its bill in equity and secured the order enjoining plaintiffs from interfering with the laying of the new line, which was put in in September and October of 1951. Thereafter plaintiffs brought the present action for trespass to lands, claiming damages for depreciation of the land, loss of future production on 3 acres of pasture lands, loss of milk check during the installation of the new line, seed, fertilizer and labor necessary to return the 3 acres to productivity, and treble damages for cutting trees. Defendant answered that the new line was laid in accordance with its "right-of-way agreement" over and through plaintiffs' lands; that by its provisions plaintiffs' damages should be determined by the arbitration method provided for in the agreement, and moved that the action be dismissed for the latter reason. Plaintiffs contended that the agreement was void for failure to comply with the statute of frauds.*

The trial judge held that the agreement was valid, that plaintiffs did not need to submit their damages to arbitration but could sue for them at law, and he submitted the case to a jury to determine the amount of plaintiffs' damages, instructing the jurors that they were not to consider depreciation in value of the land because that would be too speculative a question in view of the fact that one pipe line had already been placed in the ground. The jury returned a verdict for $650, and plaintiffs have appealed claiming that

* See CL 1948, § 566.108 (Stat Ann 1953 Rev § 26.908).—Reporter.

the agreement is void and of no force or effect because it fails to satisfy the statute of frauds, (1) because it is an insufficient memorandum of sale, (2) because the vendee is charged with more than the mere payment of money, but did not sign the agreement, (3) because the promises to be performed by the vendee were not to be performed within 1 year and it failed to sign the instrument, and (4) because the instrument failed to fully describe and define the easement granted, it is void for reason of vagueness.

Dealing first with the question of whether or not the conveyance is void for reason of uncertainty, we are of the opinion that the instrument is valid. Plaintiffs rely chiefly upon the following language used in *Fox* v. *Pierce,* 50 Mich 500:

"Now a right-of-way which is too indefinite for a determinate description is too indefinite to be established and protected by the court of chancery. Assuming that the right which is actually in controversy, or rather the right which complainants contemplate, to be capable of such a description, the rule then applies that the complainant must so state his case that if admitted by answer, or proved at the hearing, the court can decree upon it. Has that been done? Are the means given to enable the court to declare in its paper decree exactly what right of passage exists, and of what shape and dimensions the place is, and precisely where it is located with reference to lot lines and permanent erections?"

There, however, it was sought to establish an easement by prescription, and the above language was used in dismissing the bill of complaint for failure to describe the way declared upon. The quoted statement was stated to be the rule for the construction of a deed in *Stolte* v. *Krentel,* 271 Mich 98, but as used there it was merely dicta since that case was decided by the well-recognized rule that in a deed specific measurements by metes and bounds are con-

trolled by specific monuments of description in the deed. Plaintiffs cite other early cases in which we held deeds or contracts for the conveyance of land void because of failure to completely describe the property to be bound. *Cooper* v. *Pierson,* 212 Mich 657; *Droppers* v. *Marshall,* 206 Mich 560. In the later case of *Cramer* v. *Ballard,* 315 Mich 496, however, these earlier cases were expressly modified so as to permit parol evidence to supplement the description in the memorandum of sale. We believe the instant case is controlled by the more recent case of *von Meding* v. *Strahl,* 319 Mich 598, where a conveyance of "an easement and the right to the right-of-way for a road over, through and across" a certain parcel of property was claimed to be of no effect because it did not fully define the way. It appeared from the testimony in the case that the way had been staked out some 5 years prior to the giving of the deed in question. We held that there was no question as to what the parties intended to convey by their deed, and that the conveyance was valid. Here too, there was no doubt whatsoever between the parties as to where the pipe line would be laid. Plaintiff Johnston testified that at the time of making the original grant workmen were proceeding with the laying of the first pipe line and were within 40 rods of the boundary of his farm; that he saw the stakes which they had set out before he signed the papers; and that he could not help but know where the proposed digging would be. The agreement-conveyance expressly looks to the laying of more than just the first pipe line, and while the exact space which may eventually be required for additional pipe lines is not stated, the area of plaintiffs' farm which defendant may ultimately utilize is not undefined for the instrument expressly states that no pipe line is to be placed within 100 feet of any of the buildings on the premises.

Plaintiffs' further arguments that the instrument here in question is void because not signed by the grantee are based on the premises that because the conveyance contains promises on the part of the grantee it must sign. Reliance is placed on *Gannon* v. *Stansfield,* 216 Mich 440, and *Wardell* v. *Williams,* 62 Mich 50 (4 Am St Rep 814). In the *Gannon Case* we held that the promise to give a mortgage made by the vendee of a contract for the sale of land is within the statute of frauds and must therefore be signed by the vendee, even though the contract is signed by the vendor. In the *Wardell Case* we merely held that an agreement to exchange property must be signed by both parties since each promises to convey an interest in land. Both cases involved executory contracts for the conveyance of an interest in land rather than the executed, delivered and accepted conveyance. As a rule the grantee by accepting a deed poll binds himself to covenants therein contained. The assumption and agreement to pay an outstanding mortgage by the grantee of a deed is valid even though the deed is not signed by him. *Crawford* v. *Edwards,* 33 Mich 354; *Miller* v. *Thompson,* 34 Mich 10. As stated in 14 Am Jur, Covenants, Conditions and Restrictions, § 4:

"The deed poll is, however, the form of conveyance now generally used; and according to the great weight of authority, the acceptance by the grantee of a deed poll signed and sealed by the grantor containing covenants to be performed by the grantee binds the latter to the performance of these covenants as effectually as if he had executed the instrument. * * * Moreover, if the stipulations are of such character that, if incorporated in a deed duly executed by the grantee, they would have concededly constituted covenants running with the land, they become, according to the great weight of authority,

obligatory upon the successors in interest of grantor and the grantee and may be enforced against the heirs and assigns of the grantee."

In their brief, plaintiffs contend that the way in question is an easement in gross and, therefore, unassignable; that it was terminated by the attempted assignment from Austin Field Pipe Line Company to defendant. The question was not set forth in the reasons and grounds for appeal and is raised for the first time in this Court. We would not consider it (Michigan Court Rule No 67 [1945]; *Poelman* v. *Payne,* 332 Mich 597) were it not for the fact the instant case is one of a series of cases now pending in the circuit courts and the question is briefed and stressed by plaintiffs. In *Stockdale* v. *Yerden,* 220 Mich 444, we adopted the reasoning of the leading case of *Boatman* v. *Lasley,* 23 Ohio St 614, in holding that easements in gross are unassignable. However, the easement there in question was only the right to pass over the lands of another. The easement in the instant case is of a very different nature, for here the right is to bury and install pipe lines which when installed use up a part of the land itself. While we are not directed to any cases involving the latter type of easements among our own decisions, we have carefully examined those of our sister States and find that according to the weight of authority easements for pipe lines, telephone and telegraph lines and railroads are generally held to be assignable even though in gross. *McClung* v. *Sewell Valley R. Co.,* 97 W Va 685 (127 SE 53); *Columbus, Hope & Greensburg R. Co.* v. *Braden,* 110 Ind 558 (11 NE 357); *Morgan* v. *Des Moines Union R. Co.,* 113 Iowa 561 (85 NW 902); *Junction R. Co.* v. *Ruggles,* 7 Ohio St 1; *Garlick* v. *Pittsburgh & Western R. Co.,* 67 Ohio St 223 (65 NE 896). In the leading case of *Standard*

*Oil Co.* v. *Buchi,* 72 NJ Eq 492 (66 A 427), it was held that the interest gained by a deed of a right of way to lay pipe lines for the transportation of oil is assignable. That court said:

"I think the present grant is something more than an easement, although undoubtedly it includes easements, and I think that it is a great deal more than a license, in that it gives an irrevocable interest in the land and creates, by apt words, an estate, is expressed to be upon a consideration, and is sealed by the seal of the grantor."

To the same effect see *Geffine* v. *Thompson,* 76 Ohio App 64 (62 NE2d 590).

Although the rationale and reasoning vary in the different cases, they are quite uniform in their result. A multitude of them may be found in Vance, Assignability of Easements in Gross, 32 Yale L J 813; Simes, The Assignability of Easements in Gross in American Law, 22 Mich L Rev 521; and Klock, Assignability and Divisibility of Easements in Gross, 22 Chicago-Kent L Rev 239.

In the early case of *Hall* v. *City of Ionia,* 38 Mich 493, we held that the right in gross to take water from a stream was assignable, and the reasoning and language we used there seems equally applicable here:

"Upon a careful inspection of the record, we think there is very little room for controversy. It is manifest from the conveyances of Samuel Dexter, that if it is legally possible for him to secure and retain for himself the right to the water and the right to divert it into an artificial channel, he has done so. It is not at all important to find any technical name for his method, or to spend time in the legal etymology of exceptions and reservations, which terms have been used with some carelessness and confusion. The general and as we think the correct method of construing such provisions as those in

question, is to give them the force which the deeds evidently intended they should have; and we can have no doubt what intention is manifested by the terms of these instruments.

"There is no foundation for the claim that a right to the perpetual use of water must be dependent on a particular estate with which it is connected. Some confusion has perhaps been caused by an attempt among writers to create symmetry in the law by putting all rights connected with lands or springing from them into classes; and by speaking of these particular rights as easements, which very commonly require both a dominant and a servient estate. But every right of property must usually have some peculiar qualities of its own which must not be destroyed by inappropriate attempts to classify it with different kinds. The old maxim *omnis definitio periculosa* is especially true when things of essentially different qualities are placed together under one head."

There is no persuasive reason for holding the easement in question unassignable and we, therefore, refuse to so hold. Further support for this result is found in 5 Restatement, Property, § 489:

"Easements in gross, if of a commercial character, are alienable property interests."

Judgment for plaintiffs is affirmed, with costs to defendant.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.

BOYLES, J., did not sit.