*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES P. HARRIS and GUERDA E.
HARRIS,

UNPUBLISHED
February 27, 2020

Plaintiffs-Appellants,

v

No. 346156
Washtenaw Circuit Court
LC No. 18-000228-CK

FIDELITY NATIONAL TITLE INSURANCE
COMPANY and CITY OF ANN ARBOR,

Defendants-Appellees.

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

In this case involving the use and maintenance of a sewer easement, plaintiffs appeal as of right the trial court's grant of summary disposition to defendants, Fidelity National Title Company ("Fidelity") and the city of Ann Arbor (the "City"). We affirm.

## I. BACKGROUND

In 1985, plaintiffs purchased their home on Lot 88 in the Dover-Parkside Subdivision in Ann Arbor. The subdivision was platted in 1960. The plat includes several easements, including a notation that "all easements are for drainage, sewer lines, and other public utility lines." One of the easements lies on the east side of Lot 88. A second easement lies to the north of Lot 88. Both of these easements are dedicated as "private" easements. Before the dedication, plat restrictions were filed. As relevant to this appeal, the restrictions provided that "[e]asements for installation and maintenance of utilities and drainage facilities shall be reserved as shown on the recorded plat."

Nonetheless, in 1956, before the dedication of the plat, plaintiffs' predecessors in interest recorded an easement in favor of the City. This easement, referred to as the Liber 776 easement, consisting of a 60-foot wide construction easement and a 10-foot-wide permanent easement, was granted "for the construction and maintenance of storm and sanitary sewers," and permitted the City

-1-

to construct storm sewers and sanitary sewers as a part of its storm and sanitary sewer system, making thereon all needful excavations, therefor, using in said construction all needful tools, implements, equipment, materials and supplies therefor.

That after the construction of said storm and sanitary sewers, in the use of said right of way, for maintenance purposes, and to keep said storm and sanitary sewers in good order and repair, the [City] may use in such repair, all needful tools, implements, equipment, materials and supplies therefor over and across the limited maintenance right of way above described.

The easement further specified:

IT IS FURTHER AGREED, That in the construction or repair of said storm and sanitary sewers, the [City], its officers, agents, workmen, as well as the contractor and his employees, shall and will do as little damage to the said land and premises as possible, and after such construction and repair shall and will leave the same in like good condition as it was when any such construction or repair shall have commenced, except that the consideration to the parties of the first part from the City, the party of the second part, shall be full compensation for the removal or damage to any trees, flowers, shrubs, earth or sod made necessary by the construction of the sewers for which this right of way is granted.

On May 28, 1957, plaintiffs' predecessors granted a "replacement" easement, referred to as the Liber 801 easement, which contained different easement boundaries, but which contained the same operating language as the Liber 776 easement.

The parties agree that the City subsequently placed a 15-inch sewer pipe and a five-foot storm drain in the area behind where plaintiffs' home would eventually be built. The parties disagree, however, whether the pipes are actually located within the land bounded by the Liber easements or the platted easement, to the extent that the boundaries differ. The initial plans, which were prepared in 1961, purport to show that the pipes are within the boundary of the platted easement. The City maintains that the pipes are within this easement, but plaintiffs disagree.

On August 15, 1961, the City recorded a "Disclaimer and substitution of rights-of-way in Dover-Parkside Subdivision." The disclaimer stated that the City had "constructed storm and sanitary sewers in locations at variance to the right-of-way granted in Liber 776 Page 190" and to the subdivision plat, "causing hardship and inconvenience" to the owners of the subdivision. The disclaimer then "release[ed] and disclaim[ed]" any interest in the right-of-way along the lot lines "common to lots 88 and 89" as granted in the Liber 801 easement and "retain[ed] as substitution thereof, the rights-of-way along said lot lines as described in the plat of the Dover-Parkside Subdivision[.]"

Plaintiffs purchased their property, which contained an existing home, in 1985. At that time, they were issued a title insurance policy by Lawyers Title, which later merged with defendant Fidelity. According to plaintiffs, in 2013 they noticed "stair-step" cracks in the exterior brick and mortar joints along the north side of the residence closest to the easement. The home sustained

other damage as a result of settling in 2013 and 2014, including a sliding door that would no longer open, heaving of the garage floor, cracks in the basement drywall, and water damage in the basement. According to plaintiffs, an investigation into the cause of the damage led them to discover the existence of the sewer and stormwater pipes. In 2015, the City repaired the sanitary sewer pipe by placing a sleeve inside it. According to plaintiffs' expert, engineer Walter Kosinski, the City performed the repairs because of root incursions in the sanitary sewer, which Kosinski stated would be consistent with a leak of some type. Kosinski averred in an affidavit that, according to an engineering report, when the initial excavation was backfilled, the City used "substandard fill" that could have migrated either into the sewer or away from the sewer because of the leak. This, in turn, could have altered the structural stability of the surrounding soils and undermined the structural integrity of nearby structures, including plaintiffs' home.

With respect to the sewer and storm drain pipe location, plaintiffs' engineering survey contained a diagram that showed that the storm sewer was located in an area encompassed by the platted easement, from two to four feet laterally from the foundation of plaintiffs' home and approximately 17 feet below the surface. The report's conclusion, and the diagram presented by the engineering firm, was based on a March 1961 plan drawing of where the pipes were to be located. Kosinski acknowledged that—on the basis of the engineering report, the March 1961 plans, and the plat—the pipes were located inside the platted easement. According to Kosinski, however, an "as-built" survey is usually performed after a pipe is placed. Kosinski stated that the March 1961 plans did not appear to be as-built plans, because they did not so state. Thus, according to Kosinski, "there is nothing in the Plans that would allow them to be relied upon to locate the sewers adjacent to [plaintiffs'] home in the field or relative to the house itself without physical verification through excavation or from within the sewers themselves." In support of its initial motion for summary disposition, the City presented a survey that used as its source storm drain manhole locations and the March 1961 plans. In his affidavit, Kosinski pointed out what he thought were two "irregularities" in the survey compared to what one would "typically" find, and he concluded that the survey does not appear accurate. Plaintiffs also presented an affidavit of a second engineer who noted what he opined were irregularities in the survey, including that it was based on the March 1961 plans.

According to plaintiffs, the damage to their home stopped worsening after the City installed the pipe sleeve in 2015. Kosinski averred that this fact, coupled with the location of the damage to the home, indicated that the damage was "potentially being caused by the condition in the sanitary sewer that required repair." In August 2017, plaintiffs submitted a claim to Fidelity under its title insurance policy on the theory that the Liber 776 and Liber 801 easements constituted a "defect in or lien or encumbrance on such title" or resulted in the "unmarketability of such title" and that plaintiffs had sustained damage as a result. Fidelity denied plaintiffs' claim.

Plaintiffs subsequently filed this action against Fidelity and the City. Plaintiffs asserted claims against the City for trespass, breach of contract, and failure to comply with a platted easement. With respect to Fidelity, plaintiffs asserted a claim for breach of contract for breach of the title insurance policy. The City and Fidelity filed separate motions for summary disposition, which were both granted by the trial court. This appeal followed.

## II. ANALYSIS

"We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; 926 NW2d 259 (2018). "Summary disposition pursuant to MCR 2.116(C)(8) tests the legal basis of the claim and is granted if, considering the pleadings alone, the claim is so manifestly unenforceable as a matter of law that no factual progression could possibly support recovery." *PIC Maint, Inc v Dep't of Treasury*, 293 Mich App 403, 407; 809 NW2d 669 (2011) (internal quotation marks and citation omitted). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Tomra*, 325 Mich App at 294.

### A. PLAINTIFFS' CLAIM AGAINST FIDELITY

Plaintiffs argue that the trial court erred by granting Fidelity's motion for summary disposition on plaintiffs' breach-of-contract claims under MCR 2.116(C)(8). We disagree.

> A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach. A valid contract has five elements: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. [*AFT Mich v Michigan*, 303 Mich App 651, 660; 846 NW2d 583 (2014), affd 497 Mich 197 (2015) (internal citations and quotation marks omitted).]

Plaintiffs' policy provides that it insures against loss or damage from:

> 1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;
>
> 2. Any defect in or lien or encumbrance on such title;
>
> 3. Lack of a right of access to and from the land; or
>
> 4. Unmarketability of such title.

The policy lists named exclusions from coverage. The policy also lists a number of exceptions from coverage. In pertinent part, the policy provides that it does not insure against loss or damage by reason of:

> 2. Unrecorded water, mineral and oil rights, unrecorded easements and claims of easement, boundary line disputes not disclosed of record and any matters which would be disclosed by an accurate survey and inspection of the premises.

* * *

-4-

6. Easement for public utilities and drainage facilities over the rear 6 feet and the North 13 feet of the land as shown on the Plat and as reserved in Liber 924 at Page 598, Washtenaw County Records.

7. Building and Use Restrictions recorded in Liber 924 at Page 598, Washtenaw County Records.

Therefore, in order to show coverage, plaintiffs must demonstrate a "defect in or lien or encumbrance" on their title, or "unmarketablity," that does not arise from an unrecorded easement or from the recorded platted easements or use restrictions. Regarding unmarketability:

"A title may be regarded as unmarketable if a reasonably careful and prudent man, familiar with the facts, would refuse to accept the title in the ordinary course of business. It is not necessary that the title be actually bad in order to render it unmarketable. It is sufficient if there is such a doubt or uncertainty as may reasonably form the basis of litigation." [*Klais Danowski*, 373 Mich 281, 285; 129 NW2d 423 (1964) (internal citation and quotation marks omitted).]

An encumbrance on title is anything that constitutes a burden upon the title, including a right-of-way. *Lavey v Graessle*, 245 Mich 681, 683; 224 NW 436 (1929). Accordingly, plaintiffs are correct that the storm and sewer pipes on their property qualify as encumbrances, as does the platted easement itself. That being said, given the exclusions from coverage, in order to prevail, plaintiffs must show both (1) that the actual location of the pipe is not within the platted easement, and (2) that the location of the pipe does not involve a trespass by the City or that the City is not entitled to a prescriptive easement "not of record."

We note that the record does not contain conclusive evidence showing whether the sewer pipes were within or outside the platted easement. Given the age of the infrastructure, we agree with the trial court that, if the pipes lie outside the platted easement, the City likely has a prescriptive easement. If the pipes lie outside the platted easement and the City has not gained a prescriptive easement, the City is trespassing. Under any of these scenarios, plaintiffs would not be entitled to relief under the policy.

Plaintiffs claim that a question of fact exists whether the pipes lie outside the platted easement but within the bounds of the Liber 801 or Liber 776 easements. Plaintiff's argue that the Liber easements created a valid contract between plaintiffs' predecessors and the City, which the City could not unilaterally disavow. Accordingly, plaintiffs argue that any pipe existing outside the platted easement but within the bounds of a Liber easement would not be a prescriptive easement or trespass and would entitle them to recovery against Fidelity. Plaintiffs alternatively argue that the even if the disclaimer did extinguish the City's rights in the Liber easement property, the disclaimer itself created a cloud on title because of the language used in the disclaimer and because of the "confusing" utility language in the platted easement. We disagree.

We agree with plaintiffs that the Liber 776 and Liber 801 easements fall within the definition of a "deed poll" and thus constitute a contract between the City and plaintiffs' predecessors in interest. A deed poll is a written instrument that conveys some interest in property "executed by grantor only" as opposed to an indenture signed by both the grantor and grantee. See

23 Am Jur 2d, Deeds, § 3, p 80. Further, "according to the great weight of authority, the acceptance by the grantee of a deed poll signed and sealed by the grantor containing covenants to be performed by the grantee binds the latter to the performance of these covenants as effectually as if he had executed the instrument." *Johnston v Mich Consol Gas Co*, 337 Mich 572, 579; 60 NW2d 464 (1953).

In other words, a deed poll is a contract in which one party provides a property interest in exchange for the fulfillment of certain conditions by the second party. As indicated earlier, the Liber 776 and Liber 801 easements provided for at least one specific duty to be performed by the City in exchange for the granting of the easement. Namely, the easements provided that, if the City constructed or repaired any sewer or storm pipes,

> [t]hat in the construction or repair of said storm and sanitary sewers, the [City], its officers, agents, workmen, as well as the contractor and his employees, *shall and will do as little damage to the said land and premises as possible, and after such construction and repair shall and will leave the same in like good condition as it was when any such construction or repair shall have commenced*[.] [Emphasis added.]

Thus, the easements fall within the definition of a deed poll and imposed contractual duties on the part of the City when it accepted the easements.

Plaintiffs are also correct that the City could not relieve itself of its *obligations* under the agreement by unilaterally "disclaiming" the Liber 801 easement, particularly if, as plaintiffs argue, the City continued to enjoy the benefits of the prior agreement. Any rescission of obligations under an agreement must be mutual. "To constitute a mutual rescission there must of necessity be a mutual release of further obligations under the contract and a restoration of the status quo." *Tuomista v Moilanen*, 310 Mich 381, 384; 17 NW2d 222 (1945) (internal citation and quotation marks omitted). In this case, there has been no showing, or even argument, that plaintiffs' predecessors in interest had abandoned, either explicitly or implicitly, the agreement specified in the initial easements.

Thus, the disclaimer would not have relieved the City from performing its prescribed duties pursuant to the Liber 801 easement. That being said, plaintiffs are incorrect that the City could not unilaterally release its *rights* to the easement under the deed poll.

> An easement cannot be abridged or taken away by the owner of the burdened land after it has been granted or otherwise established. However, an easement may be lost through abandonment. An easement is abandoned when the owner of the easement relinquishes it with the intention of releasing his or her right to the easement. After the easement is abandoned, the unencumbered fee simple interest in the land previously burdened by the easement remains in the titleholder. [*Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 214-215; 731 NW2d 472 (2007) (internal citations omitted).]

The disclaimer is clear evidence of the City's intent to release its right to the easement, thereby returning an unencumbered interest to plaintiffs' predecessors in interest by way of abandonment.

Plaintiffs argue that they are entitled to coverage on the ground that the only thing that the disclaimer released was the "right-of-way," not the contractual rights contained in the Liber easements. Although we do not disagree with this proposition, it does not aid plaintiffs' claim against Fidelity. The policy provides for coverage from defects in title, not a separate breach-of-contract claim by a third party. Because abandonment of the Liber easements restored fee simple title of the affected property to plaintiffs' predecessors, plaintiffs cannot show a "defect in or lien or encumbrance on such title," or that the Liber easements rendered the title "unmarketable."

Plaintiffs also argue that the disclaimer "could not have released Liber 801 because the platted easement does not allow the City's sewers to be present." Even if this is true, however, it again does not aid plaintiffs. At that point, the City would have released its rights to construct or maintain a sewer within the boundaries of the Liber 801 easements, in exchange for an "invalid" right to use the platted easement to service customers other than those in the subdivision. The City would essentially then have nothing but a possible lingering duty to plaintiffs' predecessors. Any continued construction or use of storm or sewer pipes, either inside or outside the platted easement, would therefore also be prescriptive, and thus not covered under the policy.

Similarly, we agree with the trial court that by disclaiming its rights in the Liber 801 easement, any pipe built within the Liber easement, but outside the platted easement, would constitute a trespass, which, in turn, because of the length of time the trespass had occurred, could form the basis for a prescriptive easement. Again, unrecorded prescriptive easements and trespasses are not actionable under the policy.

We also reject plaintiffs' argument that the disclaimer itself created a cloud on title. Contrary to plaintiffs' reading of the disclaimer, it does not create any record notice of the continued existence of a trespass or prescriptive easement. Plaintiffs argue that the language in the disclaimer that the City "has constructed storm and sanitary sewers in locations at variance to the rights-of-way granted in Liber 801, page 195 and to the plat of said subdivision" should have put a title insurer on notice that the sewer was within the Liber 801 easement and that the earlier deed poll agreement continued to exist. However, the Liber 801 easement contains four separate rights-of-way. On the basis of the title documents alone, knowledge that at least some of the sewers were not within the earlier easements does not equate to knowledge that one of them is next to plaintiffs' home and was outside the platted easement. Also, if, as plaintiffs argue, the plat did not create a right for a public utility serving other customers inside the platted easement, the language that the sewer pipes were placed at a location at variance to the plat could have simply been a recognition that the plat did not expressly allow for this type of pipe.

Plaintiffs argue that the language in the disclaimer is similar to the registration of an affidavit under MCL 565.451a(1)(e). However, the disclaimer is not in the form of an affidavit. In addition, with respect to the Liber 801 easement, the disclaimer specifically releases and disclaims the rights to the easement. Plaintiffs have not presented any authority to support their position that such a nonaffidavit may be treated as the equivalent of an affidavit under MCL 565.451a(1)(e). In addition, even if Fidelity had investigated further, such as by reviewing the March 1961 plans and the plat, it would have presumably found the evidence that showed that the pipes were located within the platted easement.

For these reasons, we agree that plaintiffs failed to state a claim for relief against Fidelity. The trial court did not err by granting Fidelity's motion for summary disposition.

## B. CLAIMS AGAINST THE CITY

Plaintiffs argue that the trial court also erred by granting the City's motion for summary disposition with respect to their breach-of-contract claim. The City brought its motion under MCR 2.116(C)(7), (8), and (10). With respect to the breach-of-contract claim, the trial court did not specifically discuss whether it was granting summary disposition under subrule (C)(8) or (C)(10). With respect to the trial court's determination that the Liber 776 and Liber 801 easements did not create a contract between the City and plaintiffs' predecessors in interest that could be breached, the court's decision is appropriately reviewed under MCR 2.116(C)(8). The trial court also held, however, that, even if a contract existed, plaintiffs had not presented evidence that the City breached its duty under any contract. We review that decision under MCR 2.116(C)(10) to determine if plaintiffs established a question of material fact in support of their breach-of-contract claim.

Preliminarily, again, we note our agreement with plaintiffs that the easements set out in Liber 776 and Liber 801 meet the definition of a "deed poll," and thus constituted a contract between the City and plaintiffs' predecessors in interest. We also agree with plaintiffs that the City could not unilaterally relieve itself of its duties under this agreement by disclaiming its own rights under the agreement. The City would not be governmentally immune from liability for failing to comply with its duties under the Liber easements because governmental immunity does not extend to breach-of-contract claims, "even when the contract action arises out of the same facts that would support a tort action." *Koenig v City of South Haven*, 460 Mich 667, 675; 597 NW2d 99 (1999).

That being said, we disagree with plaintiffs that they presented evidence to establish a question of fact whether the City breached the deed-poll agreements in the Liber easements. Accepting as true for purposes of review that the sewer pipe is within the boundaries of the Liber 801 easement, thus triggering any continued duty by the City, plaintiffs still cannot prevail.

Plaintiffs argue that the Liber 776 and Liber 801 easements impose upon the City a continuing duty "to keep said storm and sanitary sewers in good order and repair." As the trial court noted, however, the language plaintiffs reference is actually contained within the following portion of the easement language granting the City a right of reentry:

> That after the construction of said storm and sanitary sewers, in the use of said right of way, for maintenance purposes, and to keep said storm and sanitary sewers in good order and repair, the [City] . . . may use in such repair . . . .

Contrary to plaintiffs' position, this language does not impose a contractual duty to keep the storm and sanitary sewers in good order and repair, but prescribes the scope of permissible activity by the City when using the right-of-way to perform maintenance or repairs. In other words, the City *may* enter the property to perform maintenance necessary to keep the sewers in good repair, but, per the language of the easement, the City has no *obligation* to do so. If this language imposes any limits or duty on the City, it is that the only entry the City may make upon the easement

property is to conduct maintenance and repairs. Looking at the easement language as a whole, we conclude that the City did not have a contractual duty to plaintiffs to maintain the sewer in good repair.

Plaintiffs also point this Court to a subsequent portion of the easement that states, "IT IS FURTHER AGREED" and then contains specific provisions that do impose a duty on the City to "do as little damage to the said land and premises as possible, and after such construction and repair shall and will leave the same in like good condition as it was when any such construction or repair shall have commenced." With respect to any affirmative duty set forth in these provisions, plaintiffs have not shown that any breach of this duty can survive the 10-year limitations period for a breach-of-contract action "founded on a covenant in a deed or mortgage of real estate." MCL 600.5807(5). Any breach of the duty during the construction of the sewer and storm drains, such as the use of substandard fill, occurred long before the 10-year period before plaintiffs filed this lawsuit in 2018. Plaintiffs cannot recover for any alleged breach of duty that occurred before that time. Plaintiffs do not allege or argue that the 2015 repairs left the property in worse condition than before the repairs. In fact, they appear to acknowledge the opposite. Accordingly, the trial court did not err when it held that plaintiffs cannot show that the City breached any contractual duty within the applicable limitations period.

For these reasons, we affirm the trial court's grant of summary disposition in favor of the City with respect to plaintiffs' claim for breach of contract.

Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan

-9-