# STATE OF MICHIGAN

# COURT OF APPEALS

---

TOMRA OF NORTH AMERICA, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
July 17, 2018
9:10 a.m.

No. 336871
Court of Claims
LC Nos. 16-000118-MT

---

TOMRA OF NORTH AMERICA, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

No. 337663
Court of Claims
LC No. 14-000091-MT

---

Before: GADOLA, P.J., and K. F. KELLY and RIORDAN, JJ.

GADOLA, J.

In these consolidated cases, plaintiff, Tomra of North America, appeals as of right the orders of the Court of Claims granting summary disposition to defendant, the Department of Treasury. In its opinion, the Court of Claims concluded that plaintiff's beverage container recycling machines did not qualify for the industrial processing exemption to tax liability as set forth in the General Sales Tax Act (GSTA), MCL 205.51 *et seq*., and the Use Tax Act (UTA), MCL 205.91 *et seq*. We reverse and remand.

## I. FACTS

The facts relevant to this appeal are largely undisputed. Plaintiff sells and leases the container recycling machines commonly found in grocery stores, and also sells repair parts for those machines. These machines accept aluminum cans, glass bottles, and plastic bottles for recycling. When a can or bottle is placed in the machine, the machine reads the universal product code (UPC), and then sorts the accepted cans and bottles. Aluminum cans are crushed,

-1-

plastic bottles are sorted by color, punctured, and compacted, while glass bottles are sorted by color. All containers are then moved to collection bins and thereafter transported to a recycling facility. At the recycling facility, the containers are dumped onto conveyor belts. Glass bottles are stored, while aluminum cans and plastic bottles are compacted into bales. The recycling facility sells the cans and bottles to manufacturers who remanufacture the materials into other products.

In this case, the parties dispute plaintiff's obligation to pay sales and use tax with respect to the container recycling machines for the period of March 1, 2011, through December 31, 2011. During that tax period, plaintiff collected sales tax from customers to whom they sold or leased container recycling machines, and paid the sales tax collected to defendant. Similarly, during that tax period, plaintiff paid use tax to defendant related to parts used in repairing the container recycling machines sold or leased by plaintiff.[1]

Plaintiff thereafter sought a refund of these amounts on the basis that its sales of recycling machines and repair parts were exempt from taxation under the GSTA and UTA. After defendant failed to respond to the refund request, plaintiff filed this action before the Court of Claims. Plaintiff thereafter moved for summary disposition pursuant to MCR 2.116(C)(10), seeking a ruling on the question whether plaintiff's container recycling machines and repair parts perform, or are used in, an industrial processing activity under the GSTA and UTA. The Court of Claims denied plaintiff's motion, and pursuant to MCR 2.116(I)(2), instead granted defendant summary disposition, holding that plaintiff's container recycling machines and repair parts are not used in an industrial processing activity under the GSTA and the UTA, and that plaintiff therefore is not entitled to exemption from sales and use tax for the sale and lease of the machines and their repair parts. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff contends that the Court of Claims erred in holding that plaintiff's container recycling machines and repair parts are not used in an industrial processing activity under the GSTA and the UTA, and therefore erred in granting summary disposition to defendant. We agree.

We review de novo a trial court's grant or denial of summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). In reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), we review the record in the same manner as the trial court, considering the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). We

---

[1] During this tax period, plaintiff remitted $673,511.65 in sales tax and $24,992.95 in use tax to defendant.

also review de novo the proper interpretation of statutes such as the GSTA and the UTA. See *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 112; 845 NW2d 81 (2014); see also *Granger Land Dev Co v Dep't of Treasury*, 286 Mich App 601, 608; 780 NW2d 611 (2009).

Section 4t of the GSTA, MCL 205.54t, sets forth the industrial processing exemption from the sales tax.[2] The statute provides, in relevant part:

> (1) The sale of tangible personal property to the following . . . is exempt from the tax under this act:
>
> (a) An industrial processor for use or consumption in industrial processing.
>
> (b) A person, whether or not the person is an industrial processor, if the tangible personal property is intended for ultimate use in and is used in industrial processing by an industrial processor.
>
> (c) A person, whether or not the person is an industrial processor, if the tangible personal property is used by that person to perform an industrial processing activity for or on behalf of an industrial processor.
>
> * * *
>
> (3) Industrial processing includes the following activities:
>
> * * *
>
> (d) Inspection, quality control, or testing to determine whether particular units of materials or products or processes conform to specified parameters at any time before materials or products first come to rest in finished goods inventory storage.
>
> * * *
>
> (g) Remanufacturing.
>
> * * *
>
> (i) Recycling of used materials for ultimate sale at retail or reuse.
>
> (j) Production material handling.

_____

[2] The UTA sets forth parallel provisions in MCL 205.94o such that, as the Court of Claims noted, "whether addressing the GSTA or the UTA, the analysis of the question presented by Plaintiff is the same."

(k) Storage of in-process materials.

(4) Property that is eligible for an industrial processing exemption includes the following:

* * *

(b) Machinery, equipment, tools, dies, patterns, foundations for machinery or equipment, or other processing equipment used in an industrial processing activity and in their repair and maintenance.

* * *

(6) Industrial processing does not include the following activities:

(a) Purchasing, receiving, or storage of raw materials.

(b) Sales, distribution, warehousing, shipping, or advertising activities.

* * *

(7) As used in this section:

(a) "Industrial processing" means the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail. Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage.

(b) "Industrial processor" means a person who performs the activity of converting or conditioning tangible personal property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail.

Entitlement to an exemption under the GSTA is determined by what use the customer makes of the product sold by the taxpayer. *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 154, 156; 549 NW2d 837 (1996). In accord, *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 37; 869 NW2d 810 (2015). Tax exemptions are disfavored, and the burden of proving entitlement to a tax exemption is upon the party asserting the right to the exemption. *Elias Bros*, 452 Mich at 150. Further, tax exemptions are strictly construed against the taxpayer and in favor of the taxing unit. *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 753; 298 NW2d 442 (1980) (citation omitted).

As set forth, under MCL 205.54t(1)(c), the sale of tangible personal property is exempt from sales tax if the tangible personal property is used by the buyer to perform an industrial processing activity for or on behalf of an industrial processor. Under MCL 205.54t(4)(b), property that is eligible for an industrial processing exemption includes "machinery, equipment, tools, dies, patterns, foundations for machinery or equipment, or other processing equipment used in an industrial processing activity and in their repair and maintenance." In this appeal, the question is whether the container recycling machines plaintiff sells and leases are machinery used by plaintiff's customers in an "industrial processing activity" within the meaning of the statute.

An "industrial processing activity" is not defined by the statute, but the statute does define "industrial processing" as "the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail." MCL 205.54t(7)(a). The statute also specifies activities that are considered to be industrial processing, including, under subsection (3)(d), the "inspection, quality control, or testing to determine whether particular units of materials or products or processes conform to specified parameters at any time before materials or products first come to rest in finished goods inventory storage," under subsection (3)(g), remanufacturing, under subsection (3)(i), recycling of used materials for ultimate sale at retail or reuse, under subsection (3)(j), production material handling, and under subsection (3)(k), storage of in-process materials. The statute also specifies activities that are not included in industrial processing, including under subsection (6)(a), the purchasing, receiving, or storage of raw materials, and under subsection (6)(b), sales, distribution, warehousing, shipping, or advertising activities.

Subsection 4t(7)(a) of the GSTA, in addition to defining industrial processing, also provides that "[i]ndustrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage." In light of this provision, the Court of Claims in this case concluded that plaintiff's container recycling machines could not be engaged in an industrial processing activity because the machines do not perform their task after tangible personal property begins movement from raw materials storage to begin industrial processing. That is, the tangible personal property in this case that is to be converted or conditioned through industrial processing is the cans and bottles that consumers commonly return to a grocery store. Generally, these cans and bottles are not first placed in "raw material storage" before the consumer places them in the machines.[3] The Court of Claims concluded that because the cans and bottles were not first placed in raw material storage before being placed in the machines, whatever function the machine performed could never be considered an industrial processing activity. The Court of Claims stated:

---

[3] One can envision exceptions, such as when the cans and bottles are first collected at some other point, such as at a retailer who does not have a container recycling machine, before being transported to a location that does have a container recycling machine.

[R]egardless of whether Plaintiff's recycling machines perform tasks that might fit within any specific provision of MCL 205.54t(3) or MCL 205.94o(3), because those activities occur before the industrial process begins, the exemptions found in MCL 205.54t and MCL 205.94o do not apply.

The Court of Claims construed this provision as meaning precisely what it says, that industrial processing begins when tangible personal property begins movement from raw material storage to begin industrial processing, and we agree. But the Court of Claims also construed this sentence to mean that industrial processing can *never* occur unless, first, tangible personal property begins movement from raw material storage.[4] The statute does not so provide, and we think it unlikely that the Legislature intended that interpretation.

A court's primary task when interpreting a statute is to discern and give effect to the intent of the Legislature. *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014). In doing so, we first consider the statutory language itself; if the language is unambiguous, we conclude that the Legislature must have intended the clearly expressed meaning, and we enforce the statute as written. *Id*. A statute is not ambiguous merely because a term is undefined or has more than one definition, but ambiguity exists when statutory language reasonably "admits of more than one meaning." *Klida v Braman*, 278 Mich App 60, 65; 748 NW2d 244 (2008); *Marcelle v Taubman*, 224 Mich App 215, 219; 568 NW2d 393 (1997).

Moreover, "what is plain and unambiguous often depends on one's frame of reference," *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n*, 484 Mich 1, 13; 795 NW2d 101 (2009) (quotation marks and citations omitted), and warrants considering the context of the passage by reading it "in relation to the statute as a whole and [to] work in mutual agreement." *Id*. We therefore read a statute "as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013), citing *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012). In so doing, we "avoid a construction that would render any part of a statute surplusage or nugatory, and '[w]e must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme.'" *People v Redden*, 290 Mich App 65, 76-77; 799 NW2d 184 (2010) (citation omitted). We also note that, although tax exemptions are construed strictly against the taxpayer, *Ladies Literary Club*, 409 Mich at 73, any ambiguity found in a tax statute is construed in favor of the taxpayer. *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 702; 714 NW2d 392 (2006).

As noted, section 4t of the GSTA, MCL 205.54t, provides for an industrial processing exemption for the tax imposed by the GSTA. The statute therefore focuses, of necessity, upon what activities fall within the purview of "industrial processing." Indeed, the statute is devoted

---

[4] An apt analogy is the statement "the movie starts at 9:00." The statement means what it says, that the movie starts at 9:00. But shall we read into the statement the additional meaning that "the movie starts at no other time than 9:00?" There may, perhaps, also be a 7:00 showing, and another at 11:00.

almost entirely to describing the activities that comprise, or do not comprise, industrial processing.

Among the activities that are specified by the statute as falling within the definition of industrial processing are activities that are unlikely to begin with "tangible personal property beginning movement from raw materials storage to begin industrial processing." Subsection (3)(e) provides that industrial processing includes "[p]lanning, scheduling, supervision, or control of production or other exempt activities." Subsection (3)(f) provides that industrial processing includes "[d]esign, construction, or maintenance of production or other exempt machinery, equipment, and tooling." Clearly, the activities of planning, scheduling, and designing are likely to predate tangible personal property beginning movement from raw materials storage to begin industrial processing. Nonetheless, our Legislature clearly intended, as evidenced by the language of these statutory provisions, to include these activities within the definition of industrial processing. We will not, therefore, read the language of subsection (7)(a), that "[i]ndustrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing" as a temporal requirement that would render these portions of the statute meaningless. That is, we will not read into the plain language of the statute the stricture that "no activity qualifies as industrial processing unless it is predated by tangible personal property leaving raw material storage." The statute does not say that industrial processing *must* begin this way, but rather that when tangible personal property begins movement from raw materials storage to begin industrial processing, one can rest assured that industrial processing has begun.

To discern the intention of the Legislature, statutory provisions should not be read in isolation, which can lead to a distortion of legislative intent. *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). "A provision that may seem ambiguous in isolation often is clarified by the remainder of the statutory scheme." *Midamerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014) (citation omitted). In this case, we observe that subsection (6) of the statute specifies activities that are not considered industrial processing. Among the activities not considered to be industrial processing is the "storage of raw materials." MCL 205.54t(6)(a). Having made clear that the storage of raw materials is not industrial processing, subsection (7)(a) then makes clear that once "tangible personal property begins movement from raw materials storage to begin industrial processing" the activity does qualify as industrial processing. Our Legislature thus articulated exactly which activities related to the storage of raw materials are and are not included in industrial processing, thereby providing guidance for determining exactly when in the continuum tangible personal property makes the transition from storage (not exempt) to activities of industrial processing (exempt). This provision does not attempt to foreclose the possibility that industrial processing could occur without the initial step of moving raw materials from storage,[5] or when tangible items are never in raw materials storage, and we decline to so expand the provision.

---

[5] We note that our Supreme Court in *Detroit Edison Co*, 498 Mich at 42, reached an analogous conclusion that industrial processing had occurred despite the inability to meet the industrial processing continuum described in MCL 205.54t. In that case, because the property involved

In construing the statute, and in keeping with the statute's intent, our Supreme Court has emphasized that entitlement to an exemption under the GSTA is determined by what use the customer makes of the product sold by the taxpayer. *Elias Bros*, 452 Mich at 154, 156. In reaching its conclusion in this case, the Court of Claims found determinative not the use to which the container recycling machines were put, but rather when, and perhaps where,[6] the equipment is used in relation to raw materials storage. In light of our Supreme Court's directive, we remand to the Court of Claims for consideration of whether plaintiff is entitled to a tax exemption under the GSTA and UTA, consistent with this opinion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michael J. Riordan

---

was electricity, our Supreme Court determined that industrial processing was complete when the electricity reached the consumer, despite the fact that "there is simply no point within the electric system at which 'finished goods first come to rest in finished goods inventory storage' " [before reaching the consumer]. The failure of electricity to come to rest as a finished good in inventory storage did not disqualify the transmission of electricity to consumers from the exemption. Similarly in this case, because of the nature of deposit return recycling, there is simply no point other than in the hands of the consumer where the cans and bottles are in raw materials storage. But as in *Detroit Edison Co*, that fact does not create a statutory barrier to entitlement to the exemption for qualifying activities that happen to take place at the beginning of the process rather than the end.

[6] If the container recycling machines were located somewhere less convenient to consumers than grocery stores, such as at a distant recycling facility, the cans and bottles would presumably need to be collected and stored before reaching the machines. Assuming for the sake of argument that the machines are performing tasks that otherwise would be considered an industrial processing activity, under the Court of Claims' analysis the location of the machines becomes determinative of whether an exemption is warranted, which is contrary to the Supreme Court's determination in *Elias Brothers*.