*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DELTA BUSINESS CENTER, LLC,

Petitioner-Appellant,

v

DELTA CHARTER TOWNSHIP,

Respondent-Appellee,

and

DEPARTMENT OF TREASURY,

Intervening Respondent-Appellee.

FOR PUBLICATION
June 20, 2019
9:05 a.m.

No. 343386
Oakland Circuit Court
LC No. 2017-161231-AA

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Petitioner, Delta Business Center, LLC (Delta), appeals as of right the trial court's opinion and order affirming the State Tax Commission's (STC's) denial of Delta's application for a tax exemption under the Plant Rehabilitation and Industrial Development Districts Act (the PRIDDA), MCL 207.551 *et seq*. On appeal, we are asked to decide under what circumstances leased property can qualify as "industrial property" under the PRIDDA. We conclude that for leased property to qualify as "industrial property" under the PRIDDA, a lessee must be liable for property taxes and must furnish proof of that liability. We further conclude that this means that a lessor cannot receive a tax exemption under the PRIDDA when the leased property must qualify as "industrial property." Because Delta is strictly a lessor of the property at issue, and because that property must qualify as "industrial property" for Delta to receive its requested tax exemption, the STC properly denied Delta's application. We affirm.

## I. BACKGROUND

Under the PRIDDA, local governmental units may establish "plant rehabilitation districts" and "industrial development districts." MCL 207.554(1). After such a district is

-1-

established, "the owner or lessee of a facility may file an application for an industrial facilities exemption certificate [IFEC] with the clerk of the local governmental unit that established the plant rehabilitation district or industrial development district." MCL 207.555(1). If approved by the local government, the application goes to the STC for review. MCL 207.557(1). If the STC grants the IFEC application, the applicant gets a tax advantage: in place of ad valorem taxes, an "industrial facility tax" is levied on the exempt property. MCL 207.561. If the STC had granted Delta's IFEC application, Delta's "industrial facility tax" for up to the next 12 years would have been calculated using the taxable value of the at-issue property in the year before the effective date of the IFEC, essentially freezing the taxable value of the property. MCL 207.564(1); MCL 207.566.

Delta is the owner of a 93,000-square-foot industrial park that it leases to tenants. The building on Delta's property was originally intended for printing newspapers, but, by 2017, that use was no longer economically feasible. So in an agreement between Delta Charter Township (the Township) and Delta, the Township agreed to grant Delta a 10-year IFEC; in return, Delta would invest $3,900,000 in the property.

After being approved by the Township, Delta's IFEC application went to the STC for review. For Delta to receive the IFEC that it requested, it had to establish, among other things, that its property would constitute "industrial property" under MCL 207.552(7) after it was renovated. That definition provides a detailed explanation of all the activities that can be performed on a property for it to qualify as "industrial property." The STC interpreted MCL 207.552(7) as requiring that the IFEC applicant engage in one of the activities listed in that statute for the applicant to qualify for the exemption. Though Delta's tenants were allegedly engaging in listed activities, Delta was using the property for an unlisted activity—real estate development. The STC therefore denied Delta's IFEC application, concluding that Delta "does not qualify for the exemption because it does not engage in any of the activities listed within the definition of industrial property as outlined in MCL 207.552."

Delta appealed to the circuit court.[1] The circuit court affirmed the STC's decision, but on other grounds.[2] The trial court reasoned that for leased property to be considered "industrial property" under MCL 207.552(7), "the lessee must be liable for the payment of property taxes and must furnish proof of that liability."[3] The court concluded that because Delta "offered no

---

[1] Under MCL 207.570, any party "aggrieved by the issuance or refusal to issue" an IFEC "may appeal from the finding and order of the" STC in accordance with the Administrative Procedures Act (APA), MCL 24.201 et seq. The APA, in cases like this, allows an aggrieved party to appeal an agency's final decision to the circuit court. MCL 24.301.

[2] The Department of Treasury filed a motion to intervene, which was granted by stipulation of the parties. The Township declined to file a brief in the circuit court, and has likewise declined to file a brief on appeal.

[3] MCL 207.552(7) states, in relevant part, "Industrial property may be owned or leased. However, in the case of leased property, the lessee is liable for payment of ad valorem property taxes and shall furnish proof of that liability."

proof of [its] lessees' liability for payment of property taxes," the STC was authorized by law to deny Delta's application.

Delta now appeals by right.

## II. STANDARD OF REVIEW

Delta appealed the STC's decision in accordance with the Administrative Procedures Act, MCL 24.201 *et seq*. Under that act, the circuit court was required to set aside the STC's decision if, among other reasons, it was in violation of a statute or was affected by a substantial and material error of law. MCL 24.306.

This Court reviews the circuit court's decision "to determine whether the circuit court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's findings." *Sterling Heights v Chrysler Grp, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015) (quotation marks and citation omitted). "This Court reviews de novo questions of statutory interpretation." *Id*.

## III. ANALYSIS

On appeal, Delta argues that the STC's denial of Delta's IFEC application was a material error of law or otherwise violated the PRIDDA. We disagree.

"A court's primary task when interpreting a statute is to discern and give effect to the intent of the Legislature." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 299; 926 NW2d 259 (2018). This Court must "first consider the statutory language itself; if the language is unambiguous, we conclude that the Legislature must have intended the clearly expressed meaning and we enforce the statute as written." *Id*. Tax exemptions are disfavored and are therefore strictly construed against the taxpayer in favor of the taxing unit. *Id*. at 296.

It is undisputed that for Delta to receive an IFEC, its building had to qualify as a "replacement facility" under the PRIDDA. A "replacement facility" must, among other things, be used as "industrial property" after it is renovated. See MCL 207.552(4)(a) and (b); see also *Orion Twp v State Tax Comm*, 195 Mich App 13, 16; 489 NW2d 120 (1992). Under MCL 207.559(2)(d), the STC "shall not grant" an IFEC application unless it relates to a "replacement facility within the meaning of this act," with exceptions not applicable here. Thus, the STC had to deny Delta's IFEC application if Delta's building would not constitute "industrial property" after it was renovated.

The STC concluded that Delta's building would not constitute "industrial property"—and therefore denied Delta's application—because Delta did "not engage in any of the activities listed within the definition of industrial property as outlined in MCL 207.552." The circuit court affirmed the STC's decision that Delta's building would not constitute "industrial property," but on other grounds. The circuit court believed that for leased property to qualify as "industrial property," MCL 207.552(7) required that the lessee (1) be liable for the property tax and (2) furnish proof of that liability. And because Delta had not provided proof that its lessees would be liable for the payment of property taxes, the circuit court concluded that Delta's leased property could not qualify as "industrial property."

We will address the STC's and the circuit court's differing reasons for denying Delta's application, but first address Delta's argument that MCL 207.555(1) dictates the outcome of this case. That statute provides, in relevant part, that "the owner or lessee of a facility may file an application for an industrial facilities exemption certificate . . . ." This statute establishes that, as an owner of property, Delta was entitled to file an application requesting the IFEC. But the fact that Delta could file an IFEC application does not resolve whether Delta is *entitled* to an IFEC. MCL 207.555(1) is therefore not dispositive to the outcome of this case.

Turning to the STC's decision, MCL 207.552(7) gives the definition of industrial property as follows:

"Industrial property" means land improvements, buildings, structures, and other real property, and machinery, equipment, furniture, and fixtures or any part or accessory whether completed or in the process of construction comprising an integrated whole, the primary purpose and use of which is the engaging in a high-technology activity, operation of a strategic response center, operation of a motorsports entertainment complex, operation of a logistical optimization center, operation of qualified commercial activity, operation of a major distribution and logistics facility, the manufacture of goods or materials, creation or synthesis of biodiesel fuel, or the processing of goods and materials by physical or chemical change; property acquired, constructed, altered, or installed due to the passage of proposal A in 1976; the operation of a hydro-electric dam by a private company other than a public utility; or agricultural processing facilities. Industrial property includes facilities related to a manufacturing operation under the same ownership, including, but not limited to, office, engineering, research and development, warehousing, or parts distribution facilities. Industrial property also includes research and development laboratories of companies other than those companies that manufacture the products developed from their research activities and research development laboratories of a manufacturing company that are unrelated to the products of the company. For applications approved by the legislative body of a local governmental unit between June 30, 1999 and December 31, 2007, industrial property also includes an electric generating plant that is not owned by a local unit of government, including, but not limited to, an electric generating plant fueled by biomass. For an industrial development district created before July 1, 2010, industrial property also includes an electric generating plant that is fueled by biomass that is not owned by a unit of local government if the electric generating plant involves the reuse of a federal superfund site remediated by the United States environmental protection agency and an independent study has concluded that the electric generating plant would not have an adverse effect on wood supply of the area from which the wood supply of the electric generating plant would be derived. An electric generating plant described in the preceding sentence is presumed not to have an adverse impact on the wood supply of the area from which the wood supply of the electric generating plant would be derived if the company has a study funded by the United States department of energy and managed by the department of energy, labor, and economic growth that concludes that the electric generating plant will consume not more than 7.5% of the annual wood growth within a 60-mile radius of the electric generating

-4-

plant. Industrial property also includes convention and trade centers in which construction begins not later than December 31, 2010 and is over 250,000 square feet in size or, if located in a county with a population of more than 750,000 and less than 1,100,000, is over 100,000 square feet in size or, if located in a county with a population of more than 26,000 and less than 28,000, is over 30,000 square feet in size. Industrial property also includes a federal reserve bank operating under 12 USC 341, located in a city with a population of 600,000 or more. Industrial property may be owned or leased. However, in the case of leased property, the lessee is liable for payment of ad valorem property taxes and shall furnish proof of that liability. For purposes of a local governmental unit that is a next Michigan development corporation, industrial property includes only property used in the operation of an eligible next Michigan business, as that term is defined in section 3 of the Michigan economic growth authority act, 1995 PA 24, MCL 207.803. Industrial property does not include any of the following:

(a) Land.

(b) Property of a public utility other than an electric generating plant that is not owned by a local unit of government as provided in this subsection.

(c) Inventory.

Nowhere does this lengthy definition suggest that, for property to be considered "industrial property," *the IFEC applicant* must engage in one of the activities listed. Thus, the STC's interpretation of MCL 207.552(7) improperly read a requirement into the statute that does not exist. See *Book-Gilbert v Greenleaf*, 302 Mich App 538, 542; 840 NW2d 743 (2013) (explaining that it is inappropriate to "read into [a] statute a requirement that the Legislature has seen fit to omit").

But this does not necessarily entitle Delta to relief. The trial court upheld that the STC's decision because it believed that MCL 207.552(7) places conditions on when leased property can be "industrial property," and that Delta's leased property did not satisfy those conditions.

In reaching its conclusion, the trial court relied on language in MCL 207.552(7) that states, "Industrial property may be owned or leased. However, in the case of leased property, the lessee is liable for payment of ad valorem property taxes and shall furnish proof of that liability." Clearly, leased property can be "industrial property." But the statute's unambiguous language places conditions on *when* leased property can be "industrial property": for leased property to be considered "industrial property" under the PRIDDA, the lessee must be liable for the payment of ad valorem property taxes, and must furnish proof of that liability. MCL 207.552(7).

Delta contends that the requirements placed on lessees by MCL 207.552(7) are not relevant here because Delta, not its tenants, is seeking the exemption. Delta is correct that MCL 207.552(7) only imposes responsibilities on the lessee of industrial property. But this, in our opinion, is because the Legislature intended for only lessees to receive an IFEC in cases where the at-issue leased property must qualify as "industrial property" for the applicant to receive the exemption. MCL 207.552(7) uses the phrase "in the case of leased property." This language in no way restricts what follows. The Legislature's use of this broad language shows it intended that in *all* cases where an IFEC applicant seeks to have leased property classified as "industrial

-5-

property," the lessee must *always* be liable for property taxes. If a lessee must be liable for property tax, then only the lessee is able to receive the exemption under the PRIDDA[4]; the PRIDDA grants a property-tax exemption that an individual or entity can claim only if it is liable for property tax. See *Herman Brodsky Enterprises, Inc v State Tax Comm*, 204 Mich App 376, 384; 522 NW2d 126 (1994) (holding that the owner of property "was not entitled to an exemption" under the PRIDDA because it had "placed responsibility for paying the ad valorem property taxes upon its tenants").

As Delta would have us read the phrase "in the case of leased property," the requirements that follow—that the lessee be liable for the property tax and furnish proof of that liability—are only applicable when the lessee seeks the exemption. In other words, Delta would have us read the phrase "in the case of leased property" to mean "in the case of leased property where the lessee seeks the IFEC," or similar. If the Legislature had intended this latter result, it would have used language to make that intent clear. See *Kar v Nanda*, 291 Mich App 284, 291; 805 NW2d 609 (2011) (explaining that "it is well-settled that the Legislature is presumed to mean what it says in a statute").

Our interpretation of MCL 207.552(7) finds further support in the statute's history. When the PRIDDA was first enacted by 1974 PA 198, the definition of "industrial property" was found in MCL 207.552(6). The original definition was:

> "Industrial property" means land improvements, buildings, structures, and other real property, whether leased or owned, and owned machinery, equipment, furniture, and fixtures or any part or accessory thereof whether completed or in the process of construction comprising an integrated whole, the primary purpose and use of which is the manufacture of goods or materials or the processing thereof by physical or chemical change. Industrial property shall not include any of the following:
>
> (a) Land.
>
> (b) Property of a public utility.
>
> (c) Inventory. [MCL 207.552(6), as enacted by 1974 PA 198.]

This definition has undergone several changes throughout the years. 1981 PA 211 removed the phrase "whether leased or owned" from the main paragraph and, in its place, added the following language:

---

[4] We recognize that there is no clear reason why the Legislature decided to only allow lessees of industrial property to receive an IFEC. But whatever the reason, it is not this Court's role to question the Legislature's policy decision. See *O'Donnell v State Farm Mut Auto Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979) ("The responsibility for drawing lines in a society as complex as ours of identifying priorities, weighing the relevant considerations and choosing between competing alternatives is the Legislature's, not the judiciary's.").

> Industrial property may be owned or leased if in the case of leased property, the lessee is liable for payment of ad valorem property taxes and furnishes proof of that liability. [MCL 207.552(6), as amended by 1981 PA 211.]

In 1982 PA 417, our Legislature added a single comma to this phrase, so it read:

> Industrial property may be owned or leased if, in the case of leased property, the lessee is liable for payment of ad valorem property taxes and furnishes proof of that liability. [MCL 207.552(6), as amended by 1982 PA 417.]

The definition of "industrial property" was not altered again until 1999 PA 140, where the Legislature changed the language about leased property to its current form:

> Industrial property may be owned or leased. However, in the case of leased property, the lessee is liable for payment of ad valorem property taxes and shall furnish proof of that liability. [MCL 207.552(6), as amended by 1999 PA 140.]

These two sentences have remained unaltered in every subsequent amendment to the statute.[5]

Reviewing this history, the definition of "industrial property" as originally enacted did not differentiate between owned or leased property; "industrial property" was certain types of property that could be owned or leased. MCL 207.552(6), as enacted by 1974 PA 198. This changed seven years later when the Legislature added requirements for when leased property could be deemed "industrial property": "if . . . the lessee is liable for payment of ad valorem property taxes and furnishes proof of that liability." MCL 207.552(6), as amended by 1981 PA 211. It is presumed that these additions reflect a conscious decision by the Legislature to change the definition of "industrial property" when the at-issue property is leased. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) ("[A] change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute."). That is, the Legislature purposefully changed the definition of "industrial property" to require that, if the property is leased, the lessee be liable for ad valorem property taxes and prove that liability. While the statute has undergone numerous amendments over the years, the requirements placed on leased property have been retained in every version of the statute since 1981. The Legislature's actions—changing the definition of "industrial property" and then retaining those changes—show that it intended for leased property to qualify as "industrial property" only under certain circumstances: when the lessee is liable for ad valorem taxes and furnishes proof of that liability. And as explained, if the lessee must be liable for property taxes for leased property to qualify as "industrial property,"

---

[5] See 2000 PA 247; 2002 PA 280; 2004 PA 5; 2005 PA 118; 2005 PA 267; 2007 PA 12; 2007 PA 146; 2008 PA 170; 2008 PA 457; 2008 PA 581; 2009 PA 209; 2010 PA 273; and 2011 PA 154.

then only the lessee of that property may receive an IFEC.[6]  See *Herman Brodsky Enterprises*, 204 Mich App at 384.

In sum, we conclude that the Legislature intended for "industrial property" as used in the PRIDDA to include leased property only when "the lessee is liable for payment of ad valorem property taxes" and "furnish[es] proof of that liability."  MCL 207.552(7).  We further conclude that because the lessee must be liable for property taxes in order for leased property to qualify as "industrial property," only the lessee of that property can receive the exemption under the PRIDDA.[7]  Because (1) Delta's property must qualify as "industrial property" for Delta to receive the exemption, (2) Delta's property is leased, and (3) Delta is strictly a lessor of its property, the STC properly denied Delta's IFEC application.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica

---

[6] Delta could argue that, under MCL 207.555(1), it is still entitled to seek the exemption.  Again, that statute provides the general proposition that an "owner or lessee of a facility may file an application" for an IFEC.  MCL 207.555(1).  That statute, however, says nothing about leased property, and we believe that our understanding of MCL 207.552(7) is entirely consistent with MCL 207.555(1).  When property is not leased, the owner would seek the exemption.  When property is leased, the lessee would seek the exemption.  Thus, as MCL 207.555(1) contemplates, either an owner or lessee may apply for the exemption.  But whether the exemption should be sought by an owner or a lessee in a particular case depends on whether the property is leased.

[7] It could be possible for an owner to lease part of its property and use the other part as "industrial property" under MCL 207.552(7).  In such a situation, this opinion should not be construed as necessarily denying the owner—who is a lessor—the ability to receive an IFEC for the *unleased* portion of the property.