*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOMRA OF NORTH AMERICA, INC.,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

FOR PUBLICATION
July 21, 2022
9:20 a.m.

Nos. 356950; 356951; 357493
Court of Claims
LC Nos. 14-000185-MT
           14-000091-MT
           16-000118-MT

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff TOMRA of North America, Inc., appeals as of right three separate orders entered by the Court of Claims, each granting summary disposition in favor of defendant Department of Treasury. On appeal, plaintiff primarily argues that the Court of Claims erred by concluding that its machines and attendant repair parts do not qualify for the industrial-processing exemption to tax liability set forth in MCL 205.54t of the General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, and MCL 205.94*o* of the Use Tax Act (UTA), MCL 205.91 *et seq*. Plaintiff also argues that the Court of Claims erred by affirming the Department of Treasury's decision to impose a negligence penalty under MCL 205.23(3). We affirm the Court of Claims on all of the issues before us.

## I. BACKGROUND

In *TOMRA of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 292; 926 NW2d 259 (2018) ("*TOMRA II*"), we described the machinery involved:

> Plaintiff sells and leases the container-recycling machines commonly found in grocery stores and also sells repair parts for those machines. These machines accept aluminum cans, glass bottles, and plastic bottles for recycling. When a can or bottle is placed in the machine, the machine reads the universal product code (UPC) and then sorts the accepted cans and bottles. Aluminum cans are crushed; plastic bottles are sorted by color, punctured, and compacted; and glass bottles are sorted by color. All containers are then moved to collection bins and thereafter transported to a recycling facility. At the recycling facility, the containers are dumped onto

-1-

conveyor belts. Glass bottles are stored, while aluminum cans and plastic bottles are compacted into bales. The recycling facility sells the cans and bottles to manufacturers who remanufacture the materials into other products.

This matter before us concerns the nature of the activities of the machines and how that activity should be considered for tax purposes. The dispute concerning the applicable tax classification has a long procedural history resulting in three separate appeals. Briefly stated, on May 8, 2014, plaintiff initiated LC No. 14-000091-MT in the trial court, requesting a refund of $2,458,452 from the Department of Treasury for sales tax paid for the tax period between October 1, 2003 and December 31, 2008, as it related to the sales of those machines and attendant repair parts. Next, on July 29, 2014, plaintiff initiated LC No. 14-000185-MT in the trial court, relatedly requesting a refund of $829,114.15 from the Department of Treasury for sales tax paid during the same tax period, as well as a refund of $58,502 for a negligence penalty that was imposed. The trial court dismissed both cases but, in November 2016, this Court reversed the dismissals and remanded to the trial court for further proceedings. *TOMRA of North America, Inc v Dep't of Treasury*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2016 (Docket Nos. 328545 & 329932) ("*TOMRA I*").

Meanwhile, on May 25, 2016, plaintiff initiated LC No. 16-000118-MT in the trial court, requesting a refund of $673,511.65 from the Department of Treasury for sales tax paid for the period between March 1, 2011 and December 31, 2011, as well as a refund of $24,992.95 for use tax paid during the same tax period.

On remand, after *TOMRA I*, the trial court granted summary disposition in favor of the Department of Treasury in LC Nos. 14-000091-MT and 16-000118-MT. The trial court reasoned that plaintiff was not entitled to the industrial-processing exemption in MCL 205.54t or MCL 205.94*o* because its machines perform activities before the "industrial process" commences, as that term is defined by MCL 205.54t(7)(a) and MCL 205.94*o*(7)(a), respectively.[1] Plaintiff appealed, and this Court reversed and remanded to the trial court for further proceedings. *TOMRA II*, 325 Mich App 289. In our ruling, we reasoned that the specific "industrial processing" activities, as set forth in MCL 205.54t(3) and MCL 205.94*o*(3), respectively, may occur outside the general timeframe of "industrial processing" as set forth in Subsection (7)(a) of those statutory sections. *Id*. at 299-301. For example, this Court noted, Subsection (3)(e) of those statutory sections provides that "industrial processing" includes "[p]lanning, scheduling, supervision, or control of production or other exempt activities." *Id*. at 301. "Clearly, the activities of planning [and] scheduling . . . are likely to predate tangible personal property beginning movement from raw-materials storage to begin industrial processing." *Id*. Therefore, we remanded that matter to the trial court to consider whether plaintiff was entitled to an exemption under that definition of industrial processing. *Id*. at 303.

Defendant Department of Treasury then sought leave to appeal in our Supreme Court, and the Supreme Court affirmed our ruling. *TOMRA of North America, Inc v Dep't of Treasury*, 505

---

[1] Subsection (7)(a) provides, in relevant part, that "[i]ndustrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage."

Mich 333; 952 NW2d 384 (2020) ("*TOMRA III*"). The Supreme Court "agree[d] with the Court of Claims that the tasks that TOMRA's machines perform occur before the industrial process begins under the general definition in Subsection (7)(a)" but concluded that "the temporal limitation in Subsection (7)(a) does not apply to the industrial-processing activities in Subsection (3)." *Id*. at 348, 351.

The Supreme Court remanded, and the trial court granted summary disposition in favor of the Department of Treasury in all three of TOMRA's cases. The trial court explained that plaintiff TOMRA was not entitled to the industrial-processing exemption for three, independent reasons. First, neither plaintiff nor its customers were "an industrial processor" for the purposes of Subsections (1)(a) to (1)(c) of MCL 205.54t and MCL 205.94*o*. Second, the machines did not perform an "industrial processing" activity under Subsection (3) of those statutory sections. Finally, plaintiff was procedurally not entitled to a refund in the manner requested under MCL 205.73(4). Additionally, in case LC No. 14-000185-MT, the trial court concluded that the defendant Department of Treasury did not err by imposing a negligence penalty against plaintiff under MCL 205.23(3).

In Docket No. 356950, plaintiff appeals the trial court's order in LC No. 14-000185-MT. In Docket No. 356951, plaintiff appeals the trial court's order in LC No. 14-000091-MT. In Docket No. 357493, plaintiff appeals the trial court's order in LC No. 16-000118-MT. In all three appeals, plaintiff argues that its machines and attendant repair parts are subject to the industrial-processing exemption. In addition, in Docket No. 356950, plaintiff argues that the Department of Treasury erred by imposing the negligence penalty under MCL 205.23(3). We consolidated the three appeals. *TOMRA of North America, Inc v Dep't of Treasury*, unpublished order of the Court of appeals, entered November 9, 2021 (Docket Nos. 356950, 356951, & 357493). For the reasons set forth below, we conclude that TOMRA's machines do not perform an "industrial processing" activity under Subsection (3) of MCL 205.54t and MCL 205.94*o*. We also conclude that the Department of Treasury did not err by imposing the negligence penalty against plaintiff under MCL 205.23(3).

## II. STANDARD OF REVIEW

"We review de novo a court's decision on a motion for summary disposition[.]" *TCF Nat'l Bank v Dep't of Treasury*, 330 Mich App 596, 604; 950 NW2d469 (2019). "We also review de novo questions of statutory interpretation." *Id*. at 605.

## III. DISCUSSION

### A. "INDUSTRIAL PROCESSING" ACTIVITIES

MCL 205.52(1) of the GSTA generally imposes a 6% tax upon "sales at retail," and MCL 205.93(1) of the UTA generally imposes a 6% tax upon "using, storing, or consuming tangible personal property." However, both the GSTA and the UTA allow multiple exemptions from the respective taxes they impose. Relevant here, "the industrial-processing exemption is, in part, the product of a targeted legislative effort to avoid double taxation of the end product offered for retail sale or, in other terms, to avoid pyramiding the use and sales tax." *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 37; 869 NW2d 810 (2015) (cleaned up). "To determine whether the

-3-

industrial-processing exemption applies, it is necessary to consider the activity in which the equipment is engaged and not the character of the equipment-owner's business." *Id.* (cleaned up).

MCL 205.54t of the GSTA sets forth the industrial-processing exemption from the sales tax. It provides, in relevant part, as follows:

> (1) The sale of tangible personal property . . . is exempt from the tax under this act:
>
> (a) An industrial processor for use or consumption in industrial processing.
>
> (b) A person, whether or not the person is an industrial processor, if the tangible personal property is intended for ultimate use in and is used in industrial processing by an industrial processor.
>
> (c) A person, whether or not the person is an industrial processor, if the tangible personal property is used by that person to perform an industrial processing activity for or on behalf of an industrial processor.
>
> * * *
>
> (3) Industrial processing includes the following activities:
>
> * * *
>
> (d) Inspection, quality control, or testing to determine whether particular units of materials or products or processes conform to specified parameters at any time before materials or products first come to rest in finished goods inventory storage.
>
> * * *
>
> (g) Remanufacturing.
>
> * * *
>
> (i) Recycling of used materials for ultimate sale at retail or reuse.
>
> (j) Production material handling.
>
> (k) Storage of in-process materials.
>
> * * *
>
> (7) As used in this section:
>
> (a) "Industrial processing" means the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the

manufacturing of a product to be ultimately sold at retail. Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage.

   (b) "Industrial processor" means a person who performs the activity of converting or conditioning tangible personal property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail.

See also 205.94*o* of the UTA.[2]

On appeal, plaintiff TOMRA argues that the machines perform "industrial processing" activities under Subsections (3)(d), (g), (i), (j), and (k) of MCL 205.54t and MCL 205.94*o*, and that the trial court erred by concluding otherwise. We disagree.[3]

With regard to Subsection (3)(d), "[i]nspection, quality control, or testing to determine whether particular units of materials or products or processes conform to specified parameters at any time before materials or products first come to rest in finished goods inventory storage," the trial court correctly concluded that TOMRA's machines do not perform such activities. In this context, the term "materials or products" refers to the "finished good" that is ultimately sold to the consumer. This is because the latter part of Subsection (3)(d) refers to "materials or products first com[ing] to rest in finished goods inventory storage." Thus, the objects that constitute "finished goods inventory storage" are "materials or products." Consequently, for "[i]nspection, quality control, or testing" upon "particular units of materials or products" to constitute an "industrial processing" activity, it must be performed upon the objects that will be "com[ing] to rest in finished goods inventory storage." Thus, for example, pursuant to Subsection (3)(d), a lawnmower manufacturer might perform "quality control" by inspecting the wiring on a particular lawnmower model. See *Auto Ins Co of Hartford Connecticut v Murray, Inc*, 571 F Supp 2d 408, 428 (WD NY, 2008).

As applied here, the container-recycling machines unquestionably assess various qualities of the returned containers, such as color and liquid content. This activity may constitute "testing," but it is not testing of "materials or products" for the purposes of Subsection (3)(d). The returned containers, as the record shows, are compacted by the machines and then forwarded to recycling

---

[2] MCL 205.94*o* is substantively identical to MCL 205.54t, and we will not redundantly quote the former statute. We also note that both MCL 205.54t and MCL 205.94*o* have been amended multiple times during and after the tax periods at issue. See 2004 PA 172; 2004 PA 173; 2010 PA 115; 2010 PA 116; 2012 PA 474; 2015 PA 204; 2015 PA 205. However, these amendments do not affect our analysis, and consistent with our Supreme Court in *TOMRA III*, we will refer to the present version of the applicable statutes. See *TOMRA III*, 505 Mich at 345-346.

[3] We note that plaintiff's argument regarding Subsection (3)(k) was not raised below and is therefore unpreserved. See *Griffin v Trumbull Ins Co*, 334 Mich App 1, 15; 964 NW2d 63 (2020). In any event, as explained below, it is meritless.

centers for use in completely different products. Therefore, the returned containers are not tested "materials or products." Rather, the returned containers are akin to tested "raw materials." See MCL 205.54t(6)(a); MCL 205.94*o*(6)(a).[4] Consequently, the activities performed by the machines at issue do not fall within the scope of Subsection (3)(d).

With regard to Subsection (3)(g), "[r]emanufacturing," the trial court correctly concluded that the machines do not perform such an activity. Subsection (7)(d) defines "remanufacturing" as "the activity of overhauling, retrofitting, fabricating, or repairing a product or its component parts for ultimate sale at retail." In *TOMRA III*, our Supreme Court explained that "TOMRA's machines here simply facilitate the collection of raw materials." *TOMRA III*, 505 Mich at 346 (quotation marks and citation omitted). The passive activity described by our Supreme Court falls short of affirmatively "overhauling, retrofitting, fabricating, or repairing a product or its component parts" for the purposes of Subsection (3)(g).

Neither do TOMRA's machines fit within Subsection (3)(i), "[r]ecycling of used materials for ultimate sale at retail or reuse." We agree with plaintiff that the act of returning empty containers arguably constitutes "recycling" in the ordinary sense of the word. However, Subsection (3)(i) limits exempt recycling to that which is performed upon "used materials for ultimate sale at retail or reuse." In other words, the recycled materials must themselves be sold at retail or reused. Here, the evidence shows that the returned containers are essentially destroyed and subsequently used as raw material for different products. The returned containers are not sold at retail or reused. Thus, as the trial court correctly concluded, the activities performed by the machines do not satisfy Subsection (3)(i).

Finally, with regard to Subsection (3)(j), "[p]roduction material handling," and Subsection (3)(k), "[s]torage of in-process materials," the machines do not perform such activities for similar reasons. MCL 205.54t and MCL 205.94*o* distinguish between "raw materials" and "materials" that are subsequently otherwise used in the production process.[5] As our Supreme Court explained, "TOMRA's machines here simply facilitate the collection of raw materials." *TOMRA III*, 505 Mich at 346 (quotation marks and citation omitted). Thus, the machines do not perform the downstream activities of "[p]roduction material handling," Subsection (3)(j), or "[s]torage of in-process materials," Subsection (3)(k).

Plaintiff suggests that it is irrelevant whether the machines perform a specifically enumerated "industrial processing" activity under Subsection (3) because its machines satisfy the

---

[4] Subsection (6)(a) provides that "[p]urchasing, receiving, or storage of raw materials" is not an "industrial processing" activity. We do not affirmatively decide, as the trial court did, that the activities performed by the machines at issue fall within the scope of Subsection (6)(a). We simply note that Subsections (3)(d) and (6)(a), among other subsections, suggest a difference between "raw materials" and the final "materials or products."

[5] Compare Subsection (6)(a), which provides that "[p]urchasing, receiving, or storage of raw materials" is not an "industrial processing" activity, with Subsections (3)(j) and (3)(k), providing that certain treatment of "[p]roduction material" or "in-process materials" is an "industrial processing" activity.

general definition of "industrial processing" set forth in Subsection (7)(a). In support, plaintiff argues that because Subsection (3) is written that "[i]ndustrial processing includes the following activities," that Subsection (3) should not be read restrictively because our Supreme Court has held that " 'including' is a term of enlargement, not limitation." *NACG Leasing v Dep't of Treasury*, 495 Mich 26, 31; 843 NW2d 891 (2014). Thus, TOMRA reasons, Subsection (3) merely sets forth a non-exclusive list of activities that constitute "industrial processing." We acknowledge that this argument has some persuasive value, but we need not decide that here because our Supreme Court already has held that the machines in this case perform a function prior to the beginning of the industrial process and thus fail to satisfy Subsection (7)(a). Moreover, and as we have explained, plaintiff cannot show that the machines perform a specifically enumerated "industrial processing" activity as described in Subsection (3). See *TOMRA III*, 505 Mich at 347 ("[I]f Subsection (7)(a) lays down a mandatory requirement, then TOMRA would not be entitled to an exemption even if it was engaged in one of the industrial-processing activities expressly set forth in Subsection (3).").[6]

For these reasons, the TOMRA container-recycling machines do not perform a specifically enumerated "industrial processing" activity under Subsection (3) and, as explained in *TOMRA III*, the machines do not satisfy the general definition of "industrial processing" set forth in Subsection (7)(a). It therefore follows that the machines, and the attendant repair parts for them, are not used or consumed in an "industrial processing" activity under Subsections (1)(a) to (c). Accordingly, the machines and attendant repair parts are not subject to the industrial-processing exemption under MCL 205.54t or MCL 205.94*o*.[7]

## B. NEGLIGENCE PENALTY

MCL 205.23(3) provides:

[I]f any part of the deficiency or an excessive claim for credit is due to negligence, but without intent to defraud, a penalty of $10.00 or 10% of the total amount of the deficiency in the tax, whichever is greater, plus interest as provided in subsection (2), shall be added. . . . If a taxpayer subject to a penalty under this subsection demonstrates to the satisfaction of the department that the deficiency or excess claim for credit was due to reasonable cause, the department shall waive the penalty. . . .

Mich Admin Code R 205.1012(1) provides that "[n]egligence is the lack of due care in failing to do what a reasonable and ordinarily prudent person would have done under the particular

---

[6] Incidentally, we note that Subsection (3) uses the word "includes," not "including." "When used in the text of a statute, the word 'includes' can be used as a term of enlargement or of limitation, and the word in and of itself is not determinative of how it is intended to be used." *Frame v Nehls*, 452 Mich 171, 178-179; 550 NW2d 739 (1996).

[7] Having so concluded, we do not decide whether plaintiff or its customers satisfy the definition of "industrial processor" under Subsection (7)(b), nor do we decide whether plaintiff was procedurally entitled to a refund in the manner requested under MCL 205.73(4).

circumstances," and subsection (2) of that rule provides that "[w]hen the department imposes a negligence penalty, the department bears the burden of establishing facts to support a finding of negligence and the taxpayer bears the burden of establishing facts that will negate a finding of negligence."

In this case, plaintiff argues that the negligence penalty should have been abated because any failure on its part to recognize certain of its obligations as a taxpayer resulted from a reasonable disagreement with the Department of Treasury over its obligations. Plaintiff TOMRA protests that it "has an 'honest difference of opinion' with the Department regarding the application of sales tax to the Container Recycling Machines." The trial court, however, did not uphold the negligence penalty on the basis of plaintiff's disagreements with the Department of Treasury regarding actual tax liabilities, but rather did so on the basis of plaintiff's poor record of keeping and providing pertinent records, which record keeping and document production having no bearing on any such tax-liability disagreements. Specifically, the trial court noted that "plaintiff's own accounting records showed a greater amount of gross sales than plaintiff's tax returns did," that "plaintiff did not provide sufficient evidence of exempt sales," and that "it could not be determined if plaintiff collected and remitted the appropriate amount of sales tax." The trial court added that "plaintiff did not comply with the requirements pertinent to exemption certificates because, contrary to MCL 205.62(4), it failed to 'maintain a proper record of all exempt transactions' or 'provide the record if requested by the department.' "

We find no fault with the factual analysis and legal reasoning of the trial court. Plaintiff's negligent record-keeping complicated the Department of Treasury audit and otherwise hindered the Department of Treasury's performance of its duties in association with this tax matter. Particularly problematic was the fact that there was a difference between plaintiff's accounting records and tax returns relating to the amount of sales subject to tax which, in turn, caused difficulties in the determination of any amounts owed to the Department of Treasury. The failure to maintain consistent documents in this regard, when a relatively high amount of sales tax was at stake, indicated a "lack of due care" by plaintiff. See Mich Admin Code R 205.1012(1). Therefore, the trial court did not err by affirming the imposition of the negligence penalty against plaintiff.

## IV. CONCLUSION

The trial court did not err by concluding that the machines at issue did not perform a specifically enumerated "industrial processing" activity under the GSTA and the UTA. As a result, the machines and attendant repair parts were not subject to the industrial-processing exemption set forth by MCL 205.54t and MCL 205.94*o*. Additionally, the trial court did not err by affirming the Department of Treasury's imposition of the negligence penalty against plaintiff TOMRA. Accordingly, we affirm.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan