*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RISPENS SEEDS, INC.,

Plaintiff/Counterdefendant/Third-Party Plaintiff-Appellee,

v

BAILEY FARMS, INC.,

Defendant/Counterplaintiff-Appellant,

and

SYNGENTA SEEDS, LLC, formerly known as SYNGENTA SEEDS, INC.,

Third-Party Defendant-Appellee.

UNPUBLISHED
March 12, 2020

No. 347079
Kalamazoo Circuit Court
LC No. 2016-000052-CK

Before: MURRAY, C.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

In this contract dispute between agricultural merchants, plaintiff Rispens Seeds sued defendant Bailey Farms on theories of breach of contract and account stated after Bailey Farms refused to pay a portion of a seed bill for seedless watermelons and their corresponding pollenizers. Bailey Farms filed a countercomplaint, claiming breach of express and implied warranties and breach of contract on the basis that the watermelons, when planted as instructed, showed a high instance of a watermelon disease called "hollow heart." The trial court granted summary disposition to Rispens Seeds and entered judgment in favor of Rispens Seeds in the amount of $53,413.36. Bailey Farms now appeals as of right. We affirm.

## I. BACKGROUND

Bailey Farms is a Michigan corporation engaged in commercial farming operations involving seedless watermelons. Rispens Seeds is an Illinois corporation that sells seeds, plants,

-1-

and related products to commercial growers. Among the products that Rispens Seeds distributes is a pollenizer plant, SP-6, used for pollination of seedless watermelon. SP-6 is manufactured by Syngenta Seeds, a Delaware limited liability company with its principal place of business in Minnesota. Syngenta has since developed a new pollenizer, SP-7, which it markets as producing larger flowers and more pollen than SP-6.

For the 2015 growing season, Bailey Farms purchased several varieties of watermelon seeds as well as SP-6 seeds from Rispens Seeds. At issue in this case is Bailey Farms' planting of "Exclamation" and "Captivation" seedless varieties of watermelon. According to Bailey Farms' president, Howard Bailey, Rispens Seeds advised him to plant SP-6 with seedless watermelon at a 1:3 ratio. Bailey Farms followed this directive and, according to Bailey Farms, its Captivation and Exclamation crops experienced unprecedented levels of hollow heart. After providing the watermelon seeds as well as those for the SP-6 pollenizer, Rispens Seeds sent Bailey Farms invoices for the products. Bailey Farms paid some, but not all, of the balance owing on the products it purchased from Rispens Seeds, indicating that the reduction in price was because of the hollow-heart issue.

Rispens Seeds filed the current lawsuit seeking payment of the outstanding balance on theories of breach of contract and account stated. Bailey Farms filed a countercomplaint, claiming breach of express and implied warranties and breach of contract on the basis that SP-6, used as recommended by Rispens Seeds, caused the hollow-heart issues. The trial court granted summary disposition to Rispens Seeds on its claims as well as Bailey Farms' counterclaims.[1] In granting summary disposition under MCR 2.116(C)(10), the trial court concluded (1) that Bailey Farms failed to present sufficient causation evidence to support its theory that SP-6 caused hollow heart and (2) that contractual disclaimers and limitations on liability precluded Bailey Farms' claims. The trial court entered judgment in favor of Rispens Seeds in the amount of $53,413.36, which included interest calculated according to a provision in the invoices sent by Rispens Seeds to Bailey Farms. This appeal followed.

## II. ANALYSIS

## A. CAUSATION

Bailey Farms first argues that the trial court erred by granting summary disposition to Rispens Seeds on the basis that Bailey Farms offered insufficient evidence to support its theory that SP-6, used as directed by Bailey Farms, caused hollow heart. "We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; 926 NW2d 259 (2018). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 294.

---

[1] The trial court also dismissed Rispens Seeds' third-party complaint against Syngenta Seeds, LLC, as moot. The claims against Syngenta are not at issue on appeal.

In responding to a motion for summary disposition, a party bearing the burden of proving causation must "set forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Skinner v Square D Co*, 445 Mich 153, 174; 516 NW2d 475 (1994). Causation may be shown circumstantially, but "[t]o be adequate, a [party's] circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 164. "[T]he evidence need not negate all other possible causes," but "this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 87-88; 684 NW2d 296 (2004) (internal citation and quotation marks omitted). "Our case law requires more than a mere possibility or a plausible explanation." *Id*. at 87. In other words, "litigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Skinner*, 445 Mich at 174.

Briefly stated, the crux of Bailey Farms' counterclaims and defenses is that SP-6 caused hollow heart in Bailey's fields when used at the recommended ratio of 1:3. Maintaining that Rispens warrantied the performance of SP-6 at a 1:3 ratio, Bailey Farms contends that the failure of SP-6 to perform as promised supports counterclaims for breach of warranties and breach of contract, and that it constitutes a defense to Rispens Seeds' claims for breach of contract and account stated. According to Bailey Farms, it presented sufficient causation testimony in the form of expert deposition testimony from Bailey, expert deposition testimony from Walter Edwin Kee, an affidavit from Kee, and information that Syngenta released a new product, SP-7, that improves upon SP-6. We disagree and conclude that the trial court did not err by granting summary disposition to Rispens Seeds.

In support of its theory that SP-6 used at a 1:3 ratio causes hollow heart, Bailey Farms first offered testimony from Bailey about his observations of hollow heart in his fields. Bailey testified that the hollow heart occurred in fields where he planted Exclamation and Captivation watermelons and SP-6 at a 1:3 ratio when SP-6 was the only pollination source. Bailey stated that hollow heart did not appear to the same degree in fields where SP-6 was used at a higher ratio or where other pollination sources were present. Bailey testified, however, that hollow-heart was not an issue with another variety of seedless watermelon planted at a 1:3 ratio with SP-6. Still, Bailey maintained that SP-6 inadequately pollinated the seedless watermelons, given that, although he had experienced some hollow-heart in other years, 2015 was the first year he used SP-6 and, despite no change in farming practices, hollow heart spiked in that year. Nevertheless, Bailey could not explain how pollen affected watermelon physiologically; he did not engage in any scientific testing regarding his opinions on the cause of hollow heart; and he did he know whether researchers had identified the cause of hollow heart. Bailey averred that other farmers had issues with SP-6, but he could not provide any scientific analysis of those farms.

For his part, Kee, a vegetable crop specialist at the University of Delaware, testified that his research included applied research on watermelon-crop yields and quality, but he never researched hollow heart in Michigan or conducted testing on SP-6. Kee did not consider himself an expert on seedless watermelon genetics or on inedible pollenizers. Kee testified that hollow heart is a complex issue that could be caused by "a lot of different factors," including overfertilization, nutritional deficiencies, high temperature, excessive moisture, and certain pesticides. According to Kee, hollow heart is usually caused by an interaction of a combination

of factors. Indeed, another expert, Alan Walters, agreed that hollow heart arises from a number of factors and how they interrelate.

In attempting to identify SP-6 as a cause of hollow heart among all the possibly contributing causes of hollow heart at Bailey Farms in 2015, Kee testified that it was his understanding—and the basis for his opinion—that hollow heart occurred at lower rates in Bailey Farms' fields with more SP-6 or seeded watermelons as another source of pollination, suggesting that "more pollen" "reduced the hollow heart." Notably, however, he also acknowledged that he could not "identify if, in fact, the SP-6 was a cause of hollow heart in Bailey's fields in 2015." He indicated that he still had a "couple of questions" and that "more research" was needed. More fully, Kee's causation testimony was as follows:

> My opinion is through the process of elimination that there's something about that one pollinator that he used that year, SP-6. Now—I've shared with Mr. Bailey and [Bailey Farms' attorney]—I cannot say that there's something wrong with SP-6. What I can say is that there is something that happened that happened [sic] here. I guess let me rephrase that. I don't know what's wrong with SP-6, if anything, but *there might be something wrong*.

> And that if I was handling this situation out in a field in Delaware without legal representation involved yet, I would have all the parties in the field talking and thinking about *the possibility* of why there is an excessive amount of hollow heart in a field. And we would have gone through all of those factors that I went through and then the focus would be on what about this pollinator? Was it a mix-up in the distribution? Was there something wrong in the production? What could have happened that made the correlation between SP-6 and the high incident of hollow heart[?]

> And please understand, *I'm posing those as questions to be asked. I'm not saying this is definitely it. I'm just saying that would be the next line of concern in trying to figure out what happened here*.

> \* \* \*

> I'm giving the opinion that SP-6 is possibly correlated to the problem and that—that *further investigation needs to be looked into that seed lot*, what happened in the greenhouse, all those kind of questions. And I arrived at that through the process of elimination that the other factors don't point towards the high incident of hollow heart that happened here. [*emphasis added*.]

In other words, Kee opined that "there might be something wrong SP-6, but there might not be something wrong with SP-6." Although attempting to discount some other possible factors, Kee also agreed that he could not offer an opinion on the cause of hollow heart at Bailey Farms with "a reasonable degree of scientific certainty."

More generally, Kee did *not* testify that SP-6 was inherently defective or always caused hollow heart. To the contrary, Kee testified that his observations of commercial fields where SP-

6 was used in Delaware generally showed "good production," the "fields looked good," and the farmers seemed happy with SP-6. Kee had not done any research to determine whether there was something wrong with the SP-6 pollenizers themselves. Kee also indicated that the proper planting ratio for SP-6 was 1 to 3. Rather than identify something wrong with SP-6 at the "seed level" or the amount of SP-6 recommended, Kee appeared to be concerned with whether there could have been a problem with "specific seed lots" sent to Bailey Farms or whether "something happened" to the seeds. As an example, Kee queried whether there had been some sort of "mix-up" at the greenhouse. Kee also described factors that could impact the effectiveness of a pollenizer. According to Kee, the effectiveness of SP-6—or any pollenizer—could be affected by management of the farmer, the transplant producer, problems with the bees transferring pollen between the pollenizer and the watermelon, and environmental factors such as nutrient deficiencies, temperatures, and rainfall levels. Kee admitted that, even if pollination causes hollow heart, it cannot be assumed that hollow heart is caused by a problem with the pollenizer plant.

Kee later offered an affidavit attempting to explain some of his opinions at his deposition. For instance, Kee averred that he reviewed his deposition testimony, and that, by his testimony, he "meant that [he] did not have any opinion as to whether or not something was wrong or some defect existed with SP-6 generally, not as to whether I could draw my conclusion that SP-6 failed to sufficiently pollinate melons at Baily Farms in 2015, leading to Bailey Farms' hollow heart that year." He also averred that he had "reviewed additional materials" and that his opinion that SP-6 at a 1:3 ratio was "the only factor that could have caused hollow heart" in Bailey Farms' fields "remain[ed] the same."

Assuming that these witnesses could be properly qualified as experts on the causes of hollow-heart in seedless watermelons in Bailey Farms' fields in 2015, taken as a whole, their testimony provides evidence of, at most, a correlation between hollow-heart and Bailey's use of SP-6. Although Kee's affidavit more definitely asserts that it was his opinion that SP-6 was the only factor that could have caused hollow heart at Bailey Farms in 2015, the affidavit did not create a material question of fact regarding causation. A party cannot contrive to establish a factual issue by relying on an affidavit contrary to an unfavorable deposition. See *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479-482; 633 NW2d 440 (2001). This rule applies, not only to a party's deposition testimony, but also to opinions by experts. See *id*. As applied in this case, given Kee's deposition testimony to the effect that he could not identify SP-6 as a cause with a reasonable degree of scientific certainty and that SP-6 was only a possible cause warranting further investigation, Bailey Farms cannot attempt to create a material question of fact by submitting a contradictory affidavit in which Kee attempts to more definitely identify SP-6 as an actual cause.

Without the affidavit, Kee and Bailey could say only that hollow heart occurred in fields where Bailey planted SP-6 and that SP-6 may be a cause of the issue. "[T]estimony that only establishes a correlation between conduct and injury is not sufficient to establish cause in fact." *Teal v Prasad*, 283 Mich App 384, 392; 772 NW2d 57 (2009). "It is axiomatic in logic and in science that correlation is not causation. This adage counsels that it is error to infer that A causes B from the mere fact that A and B occur together." *Craig ex rel Craig*, 471 Mich at 93. In short, without more, the simple fact that hollow heart occurred in fields with a SP-6 usage at a 1:3 ratio is not sufficient to establish SP-6 as a cause in fact of the hollow heart that Bailey Farms experienced in 2015. Accordingly, the testimony provided is insufficient to overcome the motion for summary disposition.

As a final attempt to establish a question of causation, Bailey Farms notes that Syngenta has released a new pollenizer, SP-7, which improves on SP-6 insofar as SP-7 has larger flowers and more flowers, and it flowers earlier than SP-6. As a general matter, however, evidence of a subsequent design change typically may *not* be used to prove the existence of a defect in a previous design. *Phillips v J L Hudson Co*, 79 Mich App 425, 426; 263 NW2d 3 (1977). In any event, given Bailey Farms' failure to identify any particular defect in SP-6 that caused hollow heart, it cannot logically be concluded on the facts of this case that SP-7 was created to remedy a defect in SP-6 that caused hollow heart or that, more specifically, there was a causal connection between this unidentified defect in SP-6 and hollow heart at Bailey Farms in 2015. In other words, that Syngenta subsequently released a better product is not evidence that the previous product was deficient.

Therefore, because Bailey Farms failed to establish a material question of fact on the issue of causation, we affirm the trial court's grant of summary disposition to Rispens Seeds. Therefore, it is unnecessary for us to address the trial court's ruling in regard to the parties alleged contract.

## B. INTEREST

Next, Bailey Farms argues that the trial court erred by calculating interest on the claim using the interest rate set forth in the Rispens Seeds' invoices rather than applying MCL 600.6013. More specifically, Bailey Farms asserts that, even if the parties contracted for a choice of substantive law other than Michigan, MCL 600.6013 should apply because it is procedural. We review choice-of-law questions de novo. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016).

The Rispens Seeds invoices provide for an interest rate of 18% per year, apparently applying an Illinois provision to reach that conclusion. Rather than calculating interest under the invoices, Bailey Farms asserts that the trial court should have calculated interest in keeping with Michigan's prejudgment interest statute, MCL 600.6013. Bailey Farms, however, does not identify what provision of MCL 600.6013 the trial court should have applied, nor does Bailey Farms address what prejudgment interest is generally permitted in Illinois.

Moreover, several documents in the lengthy chain of documentation between Bailey Farms, Rispens Seeds, and Syngenta purport to apply Minnesota law "*without regard to any conflict of law provision.*" Likewise, under the Rispens Seeds invoices, Illinois law governs the "rights, duties, obligations, performance, enforcement and *substantive and procedural* issues arising out of this Contract." Although "[a] court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case," Restatement Conflict of Laws, 2d § 122 (1971), where the parties specifically contract to the procedural rules of another state, the procedural rule may govern. See *OrbusNeich Med Co, Ltd, BVI v Boston Science Corp*, 694 F Supp 2d 106, 114 (D Mass, 2010).

Bailey Farms' argument regarding the interest provisions of the judgment amounts to an entire two paragraphs of their brief. In short, Bailey Farms states only that, because MCL 600.6013 is procedural, it should apply over the invoices. Under the unique factual circumstances of this case, this argument is insufficient to warrant our review. Specifically, Bailey Farms failed to

present any particularized argument as to the relevant portions of MCL 600.6013 or the choice-of-procedural-law provision—issues which are necessary to address in deciding this issue. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (internal citation and quotation marks omitted). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Accordingly, we are unable to conclude that the trial court's interest calculation was erroneous.

Affirmed.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly